**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Harold HUTCHINS and Philip L. Hutchins, Defendants-Appellants.**

**No. 86–2524.**

United States Court of Appeals,
Fifth Circuit.

May 19, 1987.

Marvin Coan, Louisville, Ky., for James Harold Hutchins.

Malcolm Segal, James R. Kirby, II, Sacramento, Cal., for Phillip Lee Hutchins.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for U.S.

Before JOLLY and DAVIS, Circuit Judges, and FELDMAN,[*] District Judge.

E. GRADY JOLLY, Circuit Judge:

James Hutchins and Philip Hutchins appeal their convictions and sentences on charges of conspiracy to possess marijuana with intent to distribute and for attempt to possess marijuana with intent to distribute. For the most part, the arguments they raise on appeal lack merit, and we affirm their convictions. Because James and Philip Hutchins were not sentenced under a valid statute, however, we vacate their sentences, and remand this case for resentencing.

I

This case involves a marijuana "reverse sting" operation. Drug Enforcement Agency (DEA) undercover agents, along with a confidential informant, began in May 1984 to negotiate with Robert Rivera and Eugene Petak on behalf of Philip Lee Hutchins to supply the latter with eight to ten thousand pounds of marijuana per month. During the negotiations, an undercover agent travelled to Kentucky, where James Harold Hutchins showed him $150,000 in cash. A "flash" of this money was used to assure the agent that the Hutchins brothers were financially able to carry out the deal. A "test" load of one thousand pounds was agreed upon.

Randall Ray Moore and James Frank Martin were engaged by Philip Hutchins to drive the load of one thousand pounds of marijuana from Houston to Kentucky. Both of them came from outside Texas to aid in this smuggling enterprise and they were to be paid by Philip Hutchins.

The first load of marijuana was to be purchased by Philip Hutchins from the agents for $305,000 in cash. Conversations with Philip Hutchins and codefendant Eugene Petak revealed that the object of the conspiracy was the routine purchase and transportation to Kentucky of two thousand pounds of marijuana per week.

On October 12, 1984, when Philip Hutchins presented the $305,000 cash which he had previously shown the agents, the money was seized and the defendants, Philip Hutchins, James Hutchins, Eugene Petak, Robert Rivera, Randall Moore and James Martin, were arrested by federal and state officers on drug-related charges.

II

The first indictment against the defendants was returned by the grand jury in Houston on November 15, 1984, on the same charges for which the defendants were arrested. Because thirty-three days had elapsed between the date of arrest and the return of the indictment, the defendants' motion to dismiss under the Speedy Trial Act, 18 U.S.C. § 3161(b), was granted without prejudice on April 8, 1985. More than fifty days elapsed between the date of dismissal and May 30, 1985, when the grand jury's indictment, charging the same criminal conduct that was the subject of the dismissed indictment, was returned against the defendants. The defendants were arrested, arraigned, and released on bond on June 3, 1985. At a pretrial conference on August 26, 1985, the defendants urged the court to dismiss the superseding indictment based on alleged violations of the Speedy Trial Act and the Local Speedy Trial Plan.

The district court, in a published opinion, *United States v. Petak*, 623 F.Supp. 74 (S.D.Tex.1985), denied the motion to dismiss.

The indictment charged the defendants Philip Hutchins, James Hutchins, Eugene

---

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

Petak, Robert Rivera, Randall Moore and James Martin, with conspiracy to possess marijuana with intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(6), (count one); with an attempt to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(6), (count two), together with violations of the Travel Act, 18 U.S.C. § 1952(b) (counts three through seven). After a jury trial, Philip Hutchins was found guilty of counts one and two and James Hutchins of count two. James Hutchins was acquitted of count one. (The other defendants pled guilty to various counts and have not appealed.)

Philip Hutchins was sentenced to twenty years and James Hutchins to eight years imprisonment. Both appeal.

### III

On appeal, both James and Philip Hutchins argue that their convictions must be reversed because the second indictment brought against them was not timely under the Speedy Trial Act. Philip Hutchins argues that his sentence was invalid because its length reflected the district court's intention to punish him for exercising his constitutional right to stand trial. Philip Hutchins also argues that his sentence was invalid because it was illegally enhanced and because consecutive sentences were given for conspiracy and attempt arising from a single transaction. Philip Hutchins argues that his conviction is defective because there is no evidence that he conspired to possess in excess of one thousand pounds of marijuana, and because the dis-

trict court allowed the introduction of inadmissible hearsay evidence at his trial.

James Hutchins argues that his conviction for attempted possession of marijuana with intent to distribute was not supported by sufficient evidence. James Hutchins also argues that the district court improperly admitted evidence of a prior conviction at his trial, and that the district court imposed an illegal sentence on him. With the exception of the appellants' assertions pertaining to the statutory validity of their sentences, we reject their arguments.

### IV

The Speedy Trial Act provides that a defendant must be indicted within thirty days of his arrest or the indictment is subject to dismissal. 18 U.S.C. §§ 3161(b) and 3162(a)(1). The initial indictment was dismissed upon motion by the defendants[1] because of the thirty-four-day delay in bringing them to trial. The dismissal was made without prejudice. More than fifty days elapsed between the date of the dismissal and May 30, 1985, when the grand jury returned a second indictment against the defendants, charging the same criminal conduct that was the subject of the earlier dismissed indictment. The defendants moved to dismiss the second indictment, arguing that the delay of over fifty days between the dismissal of the first indictment and the return of the second indictment violated the Speedy Trial Act's requirement that defendants be indicted within thirty days of arrest or service of summons.[2] In a thoughtful and reasoned opin-

---

**1.** As noted earlier, the original defendants in this case included not only the appellants, but also Eugene Petak, Robert Rivera, Randall Ray Moore, and James Frank Martin. All of the original defendants moved to dismiss the second indictment on Speedy Trial Act grounds. Since then, however, the other defendants have pled guilty to various counts and have not appealed.

**2.** The relevant provisions are 18 U.S.C. §§ 3161(b) and 3161(d)(1), which provide:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with

such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b)

(d)(1) If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such

ion, the district court denied the motion, noting that "the *dismissal* of an indictment does not trigger the running of the Speedy Trial Act because no statutorily defined event has occurred which implicates the applicable time limits." *United States v. Petak*, 623 F.Supp. at 77.

■■■ The district court's ruling was clearly correct. The dismissal of an indictment without prejudice does not trigger the running of the Speedy Trial Act's time limits. *United States v. May*, 771 F.2d 980, 983 (6th Cir.1985); *United States v. Puett*, 735 F.2d 1331, 1333–34 (11th Cir.1984); *United States v. Bittle*, 699 F.2d 1201, 1205–07 (D.C.Cir.1983). On appeal, however, James and Philip Hutchins have modified their argument and now contend that the district court's dismissal of the first indictment did not stop the Speedy Trial Act clock from running because they remained under restraint, as their bail was not exonerated after the first indictment had been dismissed. This argument lacks merit.

In the analogous context of the right to a speedy trial under the sixth amendment, a defendant's speedy trial right attaches only after the defendant has become an "accused." *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). In *Marion*, the court specified that a person is not an "accused" unless he or she is either formally charged or else arrested on criminal charges. *Id.* at 320, 92 S.Ct. at 463. The Supreme Court recently reaffirmed the *Marion* restrictions on the applicability of the sixth amendment speedy trial right in *United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). In *Loud Hawk*, the Supreme Court held that the time when no indictment was outstanding against the defendants in that case did not apply towards their speedy trial claims. 106 S.Ct. at 650. The Court noted that "when no indictment is outstanding, only the actual restraint imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provision of the Sixth Amendment." *Id.* at 654.

We believe that the principles set forth in *Marion* and *Loud Hawk* apply to the Speedy Trial Act as well, since the Speedy Trial Act itself explicitly provides that the time limits for returning indictments are to be measured from the date that the individual in question is arrested or served with a summons in connection with criminal charges. 18 U.S.C. § 3161(b).

In this case the first indictment against the appellants was dismissed. When it dismissed the indictment, the district court failed to exonerate the bail of the appellants. This was no more than a technical oversight on the district court's part, and we have no indication from the record that the appellants took any steps to correct the situation. It is clear that no charges were pending against them, that they were not accused under the law, that they were not under arrest, and there is no evidence that their movement was restrained in any practical way. Under these circumstances, it would be most inappropriate to hold that the Speedy Trial Act clock continued to run after dismissal of the first indictment. The technical failure of the district court to exonerate bail after dismissal of the indictment, unaccompanied by efforts of the appellants to correct it, cannot be equated with any status that triggers the Speedy Trial Act. Accordingly, we conclude that the Speedy Trial clock ceased to run when the district court dismissed the first indictment against the appellants on April 8, 1985, and did not begin to run anew until the superseding indictment against the appellants was returned on May 30, 1985.[3]

V

■■ Philip Hutchins argues that he was punished for exercising his constitutional

---

defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

18 U.S.C. § 3161(d)(1).

3. The superseding indictment was returned against the appellants some days before their subsequent arrests. They were not actually arrested and charged until June 3, 1985.

right to stand trial. He points out that his sentence (twenty years) was much more severe than the sentences of those who chose to plead guilty. This claim lacks merit.

The sentence imposed on Philip Hutchins in all likelihood reflected his "ringleader" status among the defendants and his prior extensive involvement in marijuana cultivation. The district court's statement, "It goes without saying that a great deal of time has been spent in reviewing the submissions and reflecting upon the trial of the two defendants and upon the pleas of guilty of the other four," does not reflect a desire to punish Philip Hutchins for standing trial. Rather, it simply shows that the district court spent time reflecting on the sentences to be imposed on the defendants and considered the evidence regarding the defendants that was brought to light at trial. There is nothing improper about that.

The sole evidence that Philip Hutchins offers to show that he was punished for electing to stand trial is the fact that he received a more severe sentence than those defendants who pled guilty. Aside from the fact that the disparity is most plausibly explained by Philip Hutchins' greater culpability, the single fact that a defendant who elects to stand trial receives a greater sentence than a codefendant who pleads guilty, does not require appellate reversal of the sentence. *United States v. Brainard,* 745 F.2d 320, 324 (4th Cir.1984).

## VI

■ Philip Hutchins contends that the district court erroneously imposed consecutive sentences on him for conspiracy to possess marijuana with intent to distribute and attempt to possess marijuana with intent to distribute, both in violation of 21 U.S.C. § 846. He argues that Congress did not intend consecutive sentences when conspiracy and attempt to commit an illegal act arise out of the same transaction. This court has previously considered this argument, and has squarely rejected it. *United*

*States v. Anderson,* 651 F.2d 375, 379 (5th Cir.1981).

## VII

■ Count 1 of the indictment charged Philip Hutchins with conspiracy to possess over one thousand pounds of marijuana with intent to distribute. Philip Hutchins argues that his conspiracy conviction was defective because there is no evidence that he conspired to possess in excess of one thousand pounds of marijuana. We disagree.

According to the record testimony of Agent Robert Parsons, an investigator for the Drug Enforcement Administration who worked in the undercover operation mounted against the appellants, Philip Hutchins told Parsons that he intended to purchase one thousand pounds of marijuana as an initial quantity, but anticipated subsequent purchases of two thousand pounds of marijuana a week. We believe this to be probative evidence. Philip Hutchins made these remarks to Agent Parsons at a meeting at which, according to Parsons, Robert Rivera, a codefendant on conspiracy charges,[4] was also present. Moreover, according to testimony of Agent Castaneda, who worked on the case, Eugene Petak, another codefendant on the conspiracy charges,[5] when initially approached by Castaneda and other agents, expressed interest in purchasing two thousand pounds of marijuana on a weekly basis. The jury may thus have reasonably inferred that the object of the conspiracy was to possess over one thousand pounds of marijuana.

## VIII

■ Philip Hutchins argues that the district court improperly admitted at trial a remark made by Philip Hutchins to Agent Parsons to the effect that he [Hutchins] had lost marijuana under cultivation in Indiana. According to Hutchins, this remark was inadmissible hearsay that did not fall into the co-conspirator exception to the hearsay rule specified in Fed.R.Evid.

---

**4.** Rivera pled guilty to the conspiracy count.

**5.** Petak also pled guilty to the conspiracy count.

801(d)(2)(E). Regardless of whether this is true, Philip Hutchins' statement was clearly admissible against him as an admission under Fed.R.Evid. 801(d)(2)(A), since his *own* statement was being used against him by the government.[6] Furthermore, Philip Hutchins lacks standing to contest the admissibility of his statement on grounds that it was not admissible against his brother. Accordingly, we reject Philip Hutchins' challenge to the admissibility at trial of his statement concerning marijuana cultivation.

## IX

■ James Hutchins argues that the evidence presented against him on count two, charging him with attempted possession of marijuana with intent to distribute in the amount of 1,000 pounds, was insufficient to support a finding of guilt. We disagree.

The evidence against him was as follows:

1. James Hutchins stayed in Philip Hutchins's Bardstown, Kentucky farmhouse;

2. The marijuana operation was obviously run out of the Bardstown, Kentucky, farmhouse based upon the drug-related contents found at the premises;

3. James Hutchins went out and dug up two metal boxes with $150,000 cash in them on or about August 30, 1984;

4. James Hutchins pled guilty to a prior extrinsic offense involving marijuana possession; and

5. James Hutchins was arrested in the hotel room next door to his brother's room on October 12, 1984.

Sufficiency of the evidence claims are evaluated under a deferential standard. A jury verdict of guilty is upheld if, based on the evidence taken in the light most favorable to the government, a reasonable jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781–89, 61 L.Ed.2d 560 (1979);

*Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457–69, 86 L.Ed. 680 (1942).

While taken individually, each piece of evidence may not point to James Hutchins' guilt, we believe that when the evidence against him is viewed collectively and in the light most favorable to the government a reasonable jury could have found James Hutchins guilty beyond a reasonable doubt. A reasonable jury could have concluded that the actions of James Hutchins, according to the evidence, were not the result of mere coincidence, but rather were the result of culpable intent on Hutchins' part. In particular, the jury could reasonably have concluded that James Hutchins' apparent access to and control of large amounts of cash, along with his residence at the farmhouse, out of which a marijuana operation was apparently run, was evidence that James Hutchins participated in a marijuana distribution scheme and that he intended, as charged in the indictment, to possess large amounts of marijuana. Moreover, the jury may reasonably have concluded that James Hutchins intended to distribute what marijuana he obtained, since the large amount of marijuana involved in the operation greatly exceeded the amount one individual could consume. We therefore reject James Hutchins' challenge to the sufficiency of the evidence supporting his conviction.

## X

■ James Hutchins contends that the district court improperly allowed the government to introduce proof that he had been convicted in Kentucky state court of possession of marijuana with intent to distribute. As noted earlier, district court evidentiary rulings are subject only to review for abuse of discretion. We find that the district court acted within its discretion.

Federal Rule of Evidence 404(b) specifies that evidence of prior crimes may be admitted when it is not used to show bad character, but instead is used for other purposes, such as proof of motive, opportunity, in-

---

**6.** Since Philip and James Hutchins were tried together, the government sought to justify admission of Philip Hutchins' statement under the co-conspirator exception to the hearsay rule so that the statement could be used against both defendants.

tent, knowledge or absence of accident. This rule is, of course, subject to the general qualification set out in Fed.R.Evid. 403 that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. James Hutchins argues that the district court abused its discretion because the prior crime was not similar to the crimes for which James Hutchins was charged, and hence the probative value of the prior conviction was outweighed by the risk of undue prejudice. We disagree.

James Hutchins was charged with conspiracy and attempt to possess marijuana with intent to distribute. His prior conviction was for possession of marijuana with intent to distribute in an amount between eight ounces and five pounds. The only real difference between the crimes he was charged with and the earlier crime was the amount of marijuana involved. Both the prior offense and the crimes for which he was charged, however, involved possession of marijuana with the intent to distribute. We therefore reject James Hutchins' contention that the similarity between the offenses was not great. Clearly, the prior conviction was probative on the issue of intent because of its similarity to the offenses for which Hutchins was charged. And while the introduction of the conviction was surely prejudicial to some extent, the balancing of probative value and prejudice is a matter within the discretion of the district court. *United States v. Beechum,* 582 F.2d 898, 915 (5th Cir.1978) (en banc). James Hutchins has not shown that the district court abused its discretion in weighing these considerations.

## XI

■ Both James and Philip Hutchins challenge the statutory authority for their sentences. They argue that the sentences imposed upon them exceeded the statutory maximim sentences available at the time. Although this is not true,[7] we nonetheless vacate the appellants' sentences, since we find that the district court did not sentence the appellants under the applicable statutory provisions in effect at the time the crimes for which the appellants were charged occurred.

The offenses for which the appellants were convicted occurred on October 12, 1984, the date on which all the defendants were arrested. On that day Philip Hutchins presented the $305,000 as payment for the marijuana the defendants thought they were purchasing from the undercover government agents. Also on that day, President Reagan signed into law changes in 21 U.S.C. § 841, which reduced from one thousand pounds to fifty kilograms the amount of marijuana necessary to bring into effect the higher penalty provisions of the statute. *See* P.L. 98–473 (98 Stat. 2068).[8] The statutory provisions governing

7. The appellants' argument is premised on the assumption that the pre-October 12, 1984, version of 21 U.S.C. § 841(b) governs their sentencing. As we discuss in this section, however, that assumption is erroneous, and the October 12, 1984, version of 21 U.S.C. § 841(b) permits even more severe sentences than those imposed upon the appellants.

8. Prior to October 12, 1984, 21 U.S.C. § 841(b)(6) provided:

In the case of a violation of subsection (a) involving a quantity of marihuana exceeding 1,000 pounds, such person shall be sentenced to a term of imprisonment of not more than 15 years, and in addition, may be fined not more than $125,000. If any person commits such a violation after one or more prior convictions of such person for an offense punishable under paragraph (1) of this paragraph, or for a felony under any other provision of this title, title III, or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 30 years, and in addition, may be fined not more than $250,000.

Section 841(b)(6) was repealed on October 12, 1984, and the relevant sentencing provisions then read in part:

(B) In the case of a controlled substance in schedule I or II except as provided in subparagraphs (A) and (C), such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $125,000, or both....

21 U.S.C. § 841(b)(1)(B) [marijuana is a schedule I substance].

(C) In the case of less than 50 kilograms of marihuana, 10 kilograms of hashish, or one kilogram of hashish oil or in the case of any controlled substance in schedule III, such person shall, except as provided in paragraphs

the sentencing of the appellants were therefore those of the amended version of 21 U.S.C. § 841 as of October 12, 1984. The district court, however, explicitly stated that it was sentencing the appellants under the pre-October 12, 1984, version of 21 U.S.C. § 841. The district court therefore erred by sentencing the appellants under provisions which were no longer applicable, and this case will therefore be remanded so that the district court may sentence the appellants under the version of 21 U.S.C. § 841 in force as of October 12, 1984.[9]

## XII

For the reasons discussed earlier, the convictions of James and Philip Hutchins are affirmed. Their sentences, however, are vacated and this case is remanded to the district court with instructions to resentence the appellants under the statutory provisions in effect on October 12, 1984, the date on which the offenses for which they were convicted occurred.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

(4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine of not more than $50,000, or both....

21 U.S.C. § 841(b)(1)(C).

The October 12, 1984, amendments also added a special parole term.

    (c) A special parole term imposed under this section or sections 845 [or] 845a of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.

A special parole term provided for in this section or section 845 [or] 845a of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c).

    Pub.L. 99–217, § 4, December 26, 1985, 99 Stat. 1728 provided that section 841(c) is to be repealed effective November 1, 1987.

9. The government argues that the sentences imposed on the appellants should be upheld because the sentences are permissible under the October 12, 1984, version of 21 U.S.C. § 841. This solution, however, would require us to speculate as to the sentences that the court would have imposed had it sentenced the appellants under the applicable version of 21 U.S.C. § 841. We find remand on this issue preferable to speculation.