**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mary Catherine MIZE,
Defendant-Appellant.**

No. 86–2353.

United States Court of Appeals,
Fifth Circuit.

June 15, 1987.

Rehearing and Rehearing En Banc
Denied July 14, 1987.

Mark Stevens, Buddy Stevens, Angleton, Tex., for defendant-appellant.

Maury S. Epner, Atty., Washington, D.C., Henry K. Oncken, U.S. Atty., James

R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, WILLIAMS, and HILL, Circuit Judges.

WISDOM, Circuit Judge:

This case comes before us for a second time. On the first appeal, we reversed the conviction of the defendant, Mary Mize, because of a constructive amendment of the indictment at trial 756 F.2d 353. After being reindicted and retried, Mize appeals her second conviction, contending that her second trial was prohibited by the double jeopardy clause and the Speedy Trial Act. We find that her double jeopardy claim was foreclosed by our decision in her previous appeal and that her retrial began within the time limitations provided by the Speedy Trial Act. Accordingly, we affirm.

I.

The defendant, Mary Catherine Mize, was originally indicted by a federal grand jury on seven counts of embezzlement and misapplication of bank funds in violation of 18 U.S.C. § 656 and three counts of making false bank entries in violation of 18 U.S.C. § 1005. The evidence at the first trial convincingly proved that Mize, while head teller at the Angleton Bank of Commerce, made an unauthorized withdrawal from the account of one customer, wrote bogus checks on the account of another, and misappropriated numerous deposits of a third customer. The government also introduced evidence proving that the Angleton Bank was insured by the Federal Deposit Insurance Corporation. This proof was necessary to satisfy the jurisdictional element of sections 656 and 1005: that the wrongful act be committed against either a Federal Reserve Bank, a member bank of the Federal Reserve, a national bank, or an insured bank (insured by the F.D.I.C.). The judge instructed the jury in accordance

with the proof presented at trial and the jury returned a verdict of guilty on all ten counts. She was sentenced to concurrent five year terms of imprisonment on five of the counts and to concurrent five year terms of probation on the five remaining counts, to commence following her release from prison. She was also ordered to pay restitution totaling $10,000.

On appeal from this first conviction, we were compelled to reverse because of a constructive amendment of the indictment concerning the essential jurisdictional element of the offenses charged. The indictment alleged that Angleton Bank was a *member* bank of the Federal Reserve. At trial, however, the government proved an alternative jurisdictional base—that Angleton Bank was an *insured* bank. Because her first conviction rested upon a jurisdictional basis different from that charged in the indictment, we reversed. We added, however, that Mize was "subject to reindictment and retrial" [1] and that "[r]etrial of Mize is not prohibited by the double jeopardy clause of the Fifth Amendment because our reversal is not predicated on evidentiary sufficiency".[2]

We issued our mandate in the first appeal on May 20, 1985. On February 5, 1986, 261 days later, the government filed its second indictment against Mize on the original ten counts; this time, however, the indictment alleged that the Angleton Bank was an insured bank. On April 15, 1986, sixty-nine days later, Mize's second trial began. She moved to dismiss the proceedings, contending that the second trial was barred by the double jeopardy clause and the Speedy Trial Act. Her motions were denied, a jury convicted her on all counts, and once more she was sentenced to five years of imprisonment, a five year term of probation, and was ordered to pay restitution of $10,000. Mize appeals again.

II.

We find no merit in Mize's first argument: that the double jeopardy clause

---

**1.** *United States v. Mize,* 756 F.2d 353, 354 (5th Cir.1985).

**2.** *Id.* at 357 n. 7.

barred her second trial. In our earlier opinion reversing her conviction, this Court expressed its "great reluctance for ... [her] guilt was established beyond a reasonable doubt." Anticipating her argument in this case on double jeopardy, we specifically held in our previous decision that "[r]etrial of Mize is not prohibited by the double jeopardy clause." Our ruling in the earlier proceeding became the law of the case and we are bound to conform to it in this proceeding.[3]

Mize argues that we should disregard our previous ruling because it is "manifestly erroneous and unjust".[4] We find nothing erroneous or unjust in our earlier ruling. In *Burks v. United States*,[5] the Supreme Court held that the double jeopardy clause does not prevent the government from retrying a criminal defendant after her conviction is reversed on appeal *unless* the reversal is based on the insufficiency of the evidence.[6] We specifically held in the first appeal that "our reversal is not predicated on evidentiary sufficiency."[7] We found no problem in the sufficiency of the government's proof; the government presented convincing proof of *every* element of the charged offenses. The only problem was that the government proved and the trial judge instructed the jury on an element different than that charged in the indictment.

Moreover, we are bound by the decision of another panel of this Court rendered in *United States v. Fitzpatrick.*[8] The *Fitzpatrick* panel faced almost the identical question before us today. Fitzpatrick was indicted for robbing a federally *insured*

savings and loan bank. The trial judge instructed the jury differently, however; he charged the jury with determining whether Fitzpatrick robbed a federally *chartered* savings and loan—an alternative jurisdictional base provided in the relevant statute. The panel reversed his conviction because of the constructive amendment of the indictment, but held: "Retrial of the defendant is not prohibited by the Double Jeopardy Clause of the Fifth Amendment since our reversal is not predicated on evidentiary sufficiency."[9] We cited *Fitzpatrick* in our first decision in this case.[10] We are bound to follow the earlier decisions of other panels in this Circuit that are directly on point.[11] Mize's retrial was not prohibited by the double jeopardy clause.

### III.

■ Mize's argues that her retrial began beyond the seventy-day time limit of the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* Specifically, she argues that section 3161(e) applies here:

> If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final....

Our decision in the first appeal became final for purposes of the Speedy Trial Act on May 20, 1985, the day we issued our mandate.[12] The retrial began 330 days later. Therefore, if subsection (e) applies here, Mize's retrial clearly violated the Act.[13] If any subsection of section 3161 is violated, section 3162 mandates that the charges be dismissed, leaving to the court's

---

3. *United States v. 8.41 Acres of Land,* 783 F.2d 1256, 1259 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 85, 93 L.Ed.2d 38 (1986).

4. *See id.*

5. 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

6. *Id.* at 15–17, 98 S.Ct. at 2149–50, 57 L.Ed.2d at 12–13.

7. 756 F.2d at 357 n. 7.

8. 581 F.2d 1221 (5th Cir.1978).

9. *Id.* at 1224 n. 4.

10. 756 F.2d at 357 n. 7.

11. *Umphlet v. Connick,* 815 F.2d 1061, 1062, (5th Cir.1987); *Victorian v. Miller,* 796 F.2d 94, 95–96 (5th Cir.1986).

12. *United States v. Cook,* 592 F.2d 877, 880 (5th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979).

13. Certain periods of delay, defined in § 3161(h), are excluded from the computation of the seventy-day period of § 3161(e). The government concedes that none of these excludable periods are involved in this case.

discretion the decision to dismiss with or without prejudice.

The government contends that subsection (e) does not apply because our first decision effectively dismissed the first indictment. Therefore, it argues, the seventy-day limitation did not begin to run until Mize was reindicted, as provided by subsection (d)(1):

> If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint ... or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

In this case, application of subsection (d)(1) routes us to subsection (c)(1), which provides:

> [T]he trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date ... of the information or indictment....

In short, if subsection (d)(1) applies, the government complied with the Act because it retried Mize within sixty-nine days of her reindictment—one day within the seventy-day limitation.

The question we must decide is a novel one. We have found no cases in this Circuit or elsewhere that involve similiar facts. After examining the purpose of the Act and the effect of our previous decision,

we hold that subsection (d)(1), not subsection (e), applies here.

■ We begin with observing that the purpose of the Act is to ensure the defendant's sixth amendment right to a speedy trial.[14] This right is implicated only when a defendant is facing pending and live charges, whether by an indictment, an information, or a complaint.[15] If the indictment is dismissed or the charges are otherwise dropped, the defendant is no longer protected by the speedy trial clause.[16] Nor does the speedy trial clause protect the defendant threatened with reindictment and retrial, even if that threat is a matter of public record and virtually certain to materialize.[17]

Congress incorporated these constitutional principles into the Speedy Trial Act. The seventy-day time limit for trial begins to run no earlier than the date of indictment. § 3161(c)(1). If the government dismisses the indictment on its own motion, the delay between the dismissal and the filing of a subsequent indictment is excluded from the seventy-day period. § 3161(h)(6). Although subsection (d)(1) speaks in terms of a dismissal "upon motion of the defendant", courts have interpreted this subsection as starting a new seventy-day period whenever the indictment is dismissed, other than by the government's motion, and a new indictment is later filed.[18] Although the Act is somewhat awkwardly structured, its clear intent is to limit its protection to defendants who face pending and live indictments or charges.[19]

■ Turning to our previous decision, we find that its effect requires that subsection (d)(1) apply here. We specifically held that

---

**14.** *United States v. Horton,* 705 F.2d 1414, 1416 n. 5 (5th Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983).

**15.** *United States v. MacDonald,* 456 U.S. 1, 6–10, 102 S.Ct. 1497, 1501–02, 71 L.Ed.2d 696, 702–04 (1982).

**16.** *Id.*

**17.** *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 654, 88 L.Ed.2d 640, 652 (1986); *United States v. MacDonald,* 456 U.S. 1, 8–9, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704 (1982).

**18.** *United States v. Feldman,* 788 F.2d 544, 549 (9th Cir.1986); *United States v. Rubin,* 733 F.2d 837, 840 (11th Cir.1984).

**19.** The sole concern of the Act with "speedy indictments" arises in § 3161(b), which requires that an indictment or information be presented within 30 days of an initial arrest. This provision is not applicable here, nor does Mize rely on it in any way.

the retrial of Mize must be preceded by the filing of a new indictment. The government obviously could not have proceeded to retry Mize on the first indictment. Once the government had constructively amended the first indictment by proving an alternative base of jurisdiction, collateral estoppel or double jeopardy would have precluded any further proceedings on that indictment.[20] Because our reversal of Mize's conviction and the effective dismissal of the original indictment was not prompted by the government's motion (indeed, it was at Mize's urging), the later filing of the second indictment began a new seventy-day period under subsection (d)(1).[21]

Mize argues that the first indictment was not technically dismissed until after the second indictment was filed, when the trial judge *sua sponte* urged the government to dismiss it on the last day of the second trial. Under subsection (d)(1), the government receives a new seventy-day period only if the superceding indictment is filed *after* the dismissal of the first.[22] In the circumstances of this case, however, the dismissal of the first indictment during the second trial was an inconsequential, ministerial act. Certainly, Mize could not be held accountable on that indictment, and had she desired, she could have had it formally dismissed at any time.[23]

Alternatively, if we accept Mize's reasoning—that subsection (d)(1) is inapplicable because we had not specifically ordered dismissal of the first indictment—we would be compelled to conclude that subsection (e) does not apply either because we had not specifically ordered a retrial. Subsection (e) requires trial to begin within seventy days only "[i]f the defendant *is to be* tried again". We did not, however, remand Mize's case for a new trial. The district court certainly could not have retried the case after our reversal unless the government obtained a new and valid indictment. Therefore, following Mize's own reasoning, neither subsection (d)(1) or (e) applies and Mize has no Speedy Trial Act claim.

The judgment of the district court is AFFIRMED.

**20.** *See Burks,* 437 U.S. at 11, 98 S.Ct. at 2147, 57 L.Ed.2d at 9 (double jeopardy clause gives government only one opportunity to prove allegations of indictment); *United States v. Gonzalez,* 548 F.2d 1185, 1191 (5th Cir.1977) (collateral estoppel prevents government from relitigating facts decided in earlier trial); *United States v. Maker,* 751 F.2d 614, 624 (3d Cir.1984) (appropriate remedy for substantial variance between indictment and proof is dismissal of the indictment), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).

**21.** *See* note 18 and accompanying text.

**22.** *See United States v. Mitchell,* 723 F.2d 1040, 1045 (1st Cir.1983); *United States v. Gleason,* 766 F.2d 1239, 1245 (8th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986); *United States v. Harris,* 724 F.2d 1452, 1454 (9th Cir.1984).

**23.** In *United States v. Hutchins,* 818 F.2d 322, 326 (5th Cir.1987), we recently rejected the argument that the Speedy Trial Act "clock" continues to run until all ministerial acts necessary to fully effect the dismissal of the indictment and the release of all "restraints" on the defendant are completed by the district court. Our remarks in *Hutchins* are applicable here:

> In this case the first indictment against the appellants was dismissed. When it dismissed the indictment, the district court failed to exonerate the bail of the appellants. This was no more than a technical oversight on the district court's part, and we have no indication from the record that the appellants took any steps to correct the situation. It is clear that no charges were pending against them, that they were not accused under the law, that they were not under arrest, and there is no evidence that their movement was restrained in any practical way. Under these circumstances, it would be most inappropriate to hold that the Speedy Trial Act clock continued to run after dismissal of the first indictment. The technical failure of the district court to exonerate bail after dismissal of the indictment, unaccompanied by efforts of the appellants to correct it, cannot be equated with any status that triggers the Speedy Trial Act. Accordingly, we conclude that the Speedy Trial Act ceased to run when the district court dismissed the first indictment against the appellants on April 8, 1985, and did not begin to run anew until the superseding indictment against the appellants was returned on May 3, 1985.
>
> At p. 326.