**Ex parte Harvey Carrie FORTUNE.**

**No. 71022.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 24, 1990.

Harvey Carrie Fortune, pro se.

Peter Speers, Dist. Atty. and F.M. "Rick" Stover, Asst. Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

This is a post-conviction application for a writ of habeas corpus filed with the Court pursuant to Article 11.07, V.A.C.C.P. *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App. 1967).

Applicant was convicted in a single trial in two counts under one indictment for the offenses of burglary of a habitation with intent to commit sexual assault and aggravated sexual assault. A jury found him guilty and assessed punishment at fifteen years on the burglary conviction and thirty years on the sexual assault conviction. On direct appeal, the burglary conviction was affirmed but the sexual assault conviction was reversed on double jeopardy grounds. *Fortune v. State*, 699 S.W.2d 706 (Tex.App.

—Beaumont 1985). This Court affirmed that judgment in a published opinion. *Fortune v. State*, 745 S.W.2d 364 (Tex.Cr.App. 1988) (*Fortune I*). Along the way, we discussed the continued viability of *Drake v. State*, 686 S.W.2d 935 (Tex.Cr.App.1985) and *Ex parte Siller*, 686 S.W.2d 617 (Tex. Cr.App.1985):

> In its petition, the State contends, and rightfully so, that the two preceding opinions are irreconcilable, and that the bench and bar of this State deserve a clarification. We will now take the opportunity to do so. The basic issue here is not whether the State may obtain multiple convictions from one indictment. That issue has been clearly decided: multiple convictions may not be had from a single indictment, regardless of whether the offenses arose out of the same or different transactions. Rather, the real issue here is whether the defendant must object to misjoinder in order to preserve the issue on appeal. As observed by the State, the opinions in *Siller* and *Drake*, supra, do not provide a principled basis for the differences in their outcomes.

*Fortune v. State*, 745 S.W.2d at 369. Overruling the portion of *Drake*, supra, which held when the State joins two or more offenses arising out of different transactions, such error must be objected to at trial or waived on appeal, a majority of this Court found the proceedings void and affirmed the Court of Appeals' disposition in reversing one conviction while affirming another.[1]

Subsequent to that decision, applicant pled guilty, was convicted of the aggravated sexual assault, and was sentenced pursuant to a plea bargain to twenty years in the Texas Department of Corrections.[2] There was no direct appeal. Applicant is currently serving time for the burglary and sexual assault cases as well as a twenty-year sentence assessed on a separate offense out of Angelina County.

---

1. Campbell, J. with McCormick, P.J., dissented to what was termed the "backward step into the quagmire of 'fundamental error'" by the majority holding such error was not waived absent an objection. The propriety of that holding is not before this Court today.

2. Now the Texas Department of Criminal Justice, Institutional Division.

Applicant in the instant cause contends the State violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution by re-indicting, trying and convicting him of the aggravated sexual assault case earlier reversed on appeal. Specifically, applicant argues the State was precluded from retrying him because there was no showing of "manifest necessity" so as to justify retrial. The State responds by asserting applicant has waived his right to complain due to the plea bargain agreement and the "law is well settled that a reversal of a conviction generally does not bar retrial." *See Ex parte Sorola,* 769 S.W.2d 920 (Tex.Cr.App.1989). The trial court recommended relief be denied without making specific findings of fact or conclusions of law on the matter. After further review, we are of the opinion relief should be denied.

■ Initially, we reject the State's threshold argument that applicant has waived the right to bring his application because he pled guilty to the charge and was convicted and punished pursuant to a plea bargain agreement with the prosecution. Both federal and state law speaks to the issue. The fact a defendant enters a plea of guilty to the latter charge does not preclude him from raising a double jeopardy contention in an application for writ of habeas corpus. *Ex parte McAfee,* 761 S.W.2d 771 (Tex.Cr.App.1988) (and cases cited therein); *Ex parte Morehead,* 596 S.W.2d 895 (Tex.Cr.App.1980); *Ex parte Hilliard,* 538 S.W.2d 135 (Tex.Cr.App. 1976); *see Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The *Menna* Court explained the matter in the following manner after citing several cases for the proposition that counseled guilty pleas inevitably waive all antecedent constitutional violations:

> The point of these cases is that a counseled plea of guilty is an admission of

factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established. Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore does not bar the claim.

423 U.S. at 62, 96 S.Ct. at 242.[3] (emphasis in original).

Based on the above, we reject the contention of the State and will turn to the merits of the habeas application.

The Fifth Amendment provides in relevant part: "[N]or shall any person be subject to the same offense to be twice put in jeopardy of life or limb." The Double Jeopardy Clause serves three primary purposes:

(1) it protects against a second prosecution for the same offense after acquittal;

(2) it protects against a second prosecution for the same offense after conviction; and

(3) it protects against multiple punishments for the same offense.

*North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted). In the instant case, applicant has clearly been subjected to "successive prosecutions" of aggravated assault if only because that conviction was reversed as void on appeal. While on original appeal applicant claimed error in being subjected to multiple punishments, *see Fortune I,* supra, in the instant application he contends the government improperly retried him for

---

**3.** The Court went on to note it did not hold a double jeopardy claim could never be waived; but, when a plea of guilty is entered to a charge, that plea does not waive a claim of double jeopardy which facially alleges a constitutional bar.

the same offense for which his conviction was reversed. Thus, we are concerned with the second "purpose" under *Pearce,* supra.

It is a "venerable principl[e] of double jeopardy jurisprudence" that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), poses no bar to further prosecution on the same charge." *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, *reh. denied* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978). *See also Montana v. Hall,* 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987) (per curiam); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 718, 79 L.Ed.2d 180, *reh. denied,* 465 U.S. 1074, 104 S.Ct. 1431, 79 L.Ed.2d 754 (1984); *United States v. Mize,* 820 F.2d 118 (5th Cir.), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987); *Millard v. Lynaugh,* 810 F.2d 1403 (5th Cir.), *cert. denied,* 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81 (1987); *Harris v. State,* 738 S.W.2d 207 (Tex.Cr.App.1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 159 (1987); *Franklin v. State,* 693 S.W.2d 420 (Tex.Cr.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986); *Ex parte Duran,* 581 S.W.2d 683 (Tex.Cr. App.1979). *See generally* 3 W. LAFAVE & J. ISRAEL, Criminal Procedure § 24.4 (1984); TEX.JUR.3rd, Vol. 21, Crim.Law, § 1644, p. 462. In *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), Justice Harlan explained the basis for this principle or rule:

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to

conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they are now in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of such a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendant's rights as well as society's interest.

*United States v. Tateo,* 377 U.S. at 466, 84 S.Ct. at 1589.

As in the case of the Fifth Amendment Double Jeopardy Clause of the federal constitution, Article I, Section 14 of the Texas Constitution protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. *Zimmerman v. State,* 750 S.W.2d 194 (Tex.Cr.App.1988) and cases cited therein. Legal precedent concerning prosecutorial or judicial overreaching becoming a bar to retrial has generally been limited to those cases where a mistrial has been declared without a defendant's consent or due to "manifest necessity" under circumstances of the individual case. *See Harrison v. State,* 788 S.W.2d 18 (Tex.Cr. App.1990) (when mistrial has been declared without consent of defendant and State seeks subsequent retrial, "manifest necessity" mandating declaration of mistrial must be shown); *McAfee v. State,* 761 S.W.2d 771 (Tex.Cr.App.1988) (no jeopardy violation where defendant retried under count of indictment abandoned during previous trial which was mistried when jury unable to reach verdict on second count); *Sewell v. State,* 696 S.W.2d 559 (Tex.Cr. App.1985) (where automatic reversal would have followed a conviction, trial court was empowered under doctrine of manifest necessity to order retrial upon its own motion and over defense objection); *McClendon v. State,* 583 S.W.2d 777 (Tex.Cr.App.1979) (even though jeopardy attaches, trial court may be justified in granting retrial if situation constitutes "manifest necessity for the act, or the ends of public justice would

otherwise be defeated"). The basis of this protection is to prevent a prosecutor or judge, who may be displeased with the progress of the case or circumstances under which the cause is being tried, from purposely committing an inappropriate act designed to avoid an acquittal, or declaring a mistrial out of hand. A defendant may feel impelled to move for a mistrial to prevent such intentional or reckless injury and be subjected to a subsequent trial under perhaps more unfavorable conditions. *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). *See also Robinson v. State,* 686 F.2d 298 (5th Cir. 1982). On the other hand, it would be pure speculation to assume that all defendants consent in this fashion. Indeed, a second trial may well provide a defendant with a better prepared opportunity to argue the case or afford advantages in jury or witness selection. While a retrial may subject a defendant to additional expense and anxiety, it does allow a defendant two chances for acquittal and maintains society's valid concern for insuring that the guilty are punished. *United States v. Tateo, supra.*

█ The instant case presents no issue of prosecutorial or judicial misconduct. Moreover, we are not faced with a situation requiring determination whether retrial is barred due to lack of "manifest necessity" in ordering a mistrial in the cause. Although it is true the trial court would have had good cause for declaring a mistrial given our decision in *Fortune I,* supra, the fact remains applicant was not retried on the ground his earlier trial was interrupted. Retrial in this case only came after applicant was convicted and the conviction was reversed on discretionary review. The doctrine of "manifest necessity" simply does not apply in the context of the facts of this case.

█ It has not escaped our attention that conflicting principles are present in the case at bar. Double Jeopardy clearly prohibits the State from obtaining convictions in successive prosecutions where "common incidents" exist. *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). To determine whether a subsequent prosecution is barred by the Double Jeopardy Clause, a two-prong test is utilized. The first step is to undertake an analysis consistent with *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Where the intent of the Legislature is ambiguous as to allowing an individual to be simultaneously punished for the commission of multiple offenses under separate and distinct statutes, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not. *Id.* Once the *Blockburger* test is satisfied, the focus shifts from a technical comparison of the elements of the two offenses to comparison of the conduct which must be proven in order to gain conviction on the offense. The Supreme Court recently revisited this matter in *Grady v. Corbin,* 495 U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). Corbin was involved in an automobile accident in which one person died and a second was injured. He was served with two traffic tickets charging him with the misdemeanor offenses of driving while intoxicated and failure to keep to the right of the median. In exchange for his guilty plea, the prosecutor recommended a "minimum sentence", and Corbin was sentenced to a fine and had his driver's license revoked for a period of six months. At the time of sentencing, the trial judge was unaware of the injury and fatality in the case.

Two months after sentencing, a Grand Jury returned indictments charging Corbin with reckless manslaughter, second-degree vehicular manslaughter, criminally negligent homicide, third-degree reckless assault and DWI. Corbin sought a writ of prohibition. The Appellate Division denied the petition without opinion, but the New York Court of Appeals reversed, ruling that Double Jeopardy prohibited further prosecution. The Supreme Court granted certiorari and ultimately affirmed. In his opinion, Justice Brennan formally adopted

the standard for determining jeopardy in the context of successive prosecutions which had been suggested in an earlier case. He explained:

> In *Illinois v. Vitale*, 447 U.S. 410 [100 S.Ct. 2260, 65 L.Ed.2d 228] (1980), we suggested that even if two successive prosecutions were not barred by the Blockburger test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution. Today we adopt the suggestion set forth in Vitale.

> \* \* \* \* \* \*

Thus, a subsequent prosecution must do more than merely survive the Blockburger test. As we suggested in Vitale, the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific instances in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding. See *Dowling v. United States*, 493 U.S. —— [110 S.Ct. 668, 107 L.Ed.2d 708] (1990). On the other hand, a State cannot avoid the dictates of the Double Jeopardy Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct.

*Grady v. Corbin*, 110 S.Ct. at 1087, 1093. The Court held that the State, largely be-

cause of its admission that it would depend upon the same conduct in a subsequent trial, was barred from trying Corbin on the felony indictments after being adjudicated guilty on the misdemeanor charges arising out of the same accident. The panel went on to say, however, their holding would not prevent a successive prosecution on the felony charges "if the bill of particulars revealed that the State would not rely on proving the conduct for which Corbin had already been convicted ..." *Id.*

■ If we were merely faced with a *Grady v. Corbin* situation, we would now undoubtedly turn our attention to the task of comparing statutory elements under *Blockburger,* supra, and finding the two offenses not to be the same thereunder, would proceed to compare the conduct with which the State proved up its case in both the earlier and subsequent trials. The exercise would determine whether the State depended upon the same conduct in the two proceedings as proof of the offenses charged. If such were the case, the successive prosecution would be barred on Double Jeopardy grounds.[4] However, the case before us does not present a clear-cut example of a *Grady v. Corbin* successive prosecution case, for the reason that the conviction here was earlier reversed at the appellate level. Thus, also implicated is the conflicting principle stating that upon reversal of a conviction on grounds other than sufficiency of evidence, the State is free to retry the defendant on the charge and obtain a valid conviction against him in the interest of justice. *See United States v. Tateo*, supra, and cases cited *ante*. This rule applies where an indictment is held to be fatally defective by an appellate court. *See United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1986). The indict-

**4.** Any part of such a holding would also implicate an attempt to retry the individual a third time. Explicitly stated on the last page of the opinion in *Grady*, "[T]his holding would not bar a subsequent prosecution" on the offense for which conviction was reversed if the State could show it "would not rely on proving the conduct for which (the individual) had already been convicted." Thus, the State would not be per-

manently barred from prosecution of the offense where conduct different from that proven in the first trial could be shown. In the usual case where the State has been careful not to misjoin charges, there will be no problem, under the rule that the State may charge multiple offenses in the same prosecution, as long as each is charged in a separate instrument.

ment in *Fortune I* was held to be fatally defective due to misjoinder of counts, with resultant remedial measures ordered by this Court.

A similar legal if factually different situation was encountered in *United States v. Ball*, supra. Millard Fillmore Ball, John C. Ball, and Robert E. Boutwell were indicted for the murder with malice aforethought of one William T. Box, in Pickens County, the Chickasaw Nation, Indian Territory, on June 26, 1889. John C. and Robert E. were convicted and sentenced to death, while Millard F. was acquitted of the charge. Appeal followed, with the assignment of errors filed in the Circuit Court specifying, *inter alia*, that the indictment under which they were tried was invalid for failing to specify when and where the decedent was dispatched. Upon that writ of error the Supreme Court held that the indictment, although sufficiently charging an assault, was fatally defective by reason of failing to aver either the time or place of the death of Box. The Court therefore reversed the convictions of John C. and Robert E. and remanded the cause with instructions to quash the indictment.

The Circuit Court thereafter dismissed the indictment and a Grand Jury returned a new indictment against all three defendants. Special pleas of former jeopardy were interposed but rejected by the trial court, and the jury was instructed to find against the pleas of former jeopardy, on the ground that the Supreme Court had decided the former indictment was insufficient as an indictment for murder. The jury returned a verdict of guilty against all three defendants and each was sentenced to death. A second writ of error was filed in the case.

The Supreme Court distinguished between Millard's and his two co-defendant's special pleas. The Court upheld Millard's plea of former jeopardy based upon his acquittal by a jury in a trial court of competent jurisdiction:

> ... (W)e are unable to resist the conclusion that a general verdict of not guilty

to an indictment undertaking to charge murder, and not objected to before the verdict as insufficient in that respect, is a bar to a second indictment for the same killing. ....An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense. But although the indictment was fatally defective, yet, if the court had jurisdiction of the cause and of the party, its judgment is not void, but only voidable by writ of error; and until so avoided, cannot be collaterally impeached. If the judgment is upon a verdict of guilty, and unreversed, it stands good, and warrants the punishment of the defendant accordingly, and he could not be discharged by a writ of *habeas corpus.* If the judgment is upon an acquittal, the defendant, indeed, will not seek to have it reversed; and the government cannot. But the fact that the judgment of a court having jurisdiction of the case is practically final affords no reason for allowing its validity and conclusiveness to be impugned in another case. ...Millard F. Ball's acquittal by the verdict of the jury could not be deprived of its legitimate effect by the subsequent reversal by this court of the judgment against the other defendants upon the writ of error sued out by them only.

*United States v. Ball*, 163 U.S. at 669–670, 16 S.Ct. at 1194–1195 (citations deleted) (emphasis in original).

More on point to the issue in the case before us, the Supreme Court then turned to the claims of John C. and Robert E. and summarily affirmed the judgments entered against them below:

> Their plea of former conviction cannot be sustained, because upon a writ of error sued out by themselves the judgment and sentence against them were reversed, and the indictment ordered to be dismissed. How far, if they had taken no steps to set aside the proceedings in

the former case, the verdict and sentence therein could have been held to bar a new indictment against them need not be considered, because it is quite clear that a defendant, *who procures a judgment against him upon an indictment to be set aside*, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted. The court therefore rightly overruled their plea of former jeopardy; and cannot have prejudiced them by afterwards permitting them to put in evidence the former conviction, and instructing the jury that the plea was bad.

*Id.* at 671–672, 16 S.Ct. at 1195 (emphasis added).

■ On original submission in the case at bar, only part of the charging instrument was found to be fatally flawed. Only one of the two convictions was reversed on the basis that the corresponding part of the indictment was "void".[5] Yet, we believe the same theory should hold in a case where part of the instrument is fatally flawed as where the entire instrument suffers from a fatal infirmity. The rationale remains the same. The State may retry a defendant after a successful appeal because the "original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *North Carolina v. Pearce*, 395 U.S. at 721, 89 S.Ct. at 2078. That is precisely the effect of our opinion in *Fortune I.* With concern to the aggravated sexual assault charge, appellant's slate was "wiped clean" by our finding the indictment was fatally flawed as to that part of the pleading. We therefore hold that the Double Jeopardy Clause presents no bar for the government's retrial of appellant who was successful in setting aside his first conviction because of an error in the proceedings leading to the

first conviction. *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *United States v. Tateo*, supra; *United States v. Ball*, supra.

Applicant's request for relief is denied.

TEAGUE, J., dissents.

CLINTON and STURNS, JJ., not participating.

---

5. According to *Ball*, supra, where the trial court has party and subject matter jurisdiction over the case, a "fatal flaw" in the charging instrument would not make the indictment *void*, merely *voidable.* Using the same rationale, since the original trial court clearly had jurisdiction in this case, it would appear that the improper conviction for aggravated sexual assault was voidable and not void. To the extent our opinion in *Fortune I* can be read to the contrary, it is expressly overruled. *See Fortune v. State*, 745 S.W.2d at 371 (Campbell, J., dissenting).