

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00092-CR

EX PARTE DESEAN LAVERNE MCPHERSON

On Appeal from the 6th District Court
Lamar County, Texas
Trail Court No. 27362

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

---

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Desean Laverne McPherson was convicted of tampering with or fabricating physical evidence and was sentenced to ten years' incarceration, suspended in favor of five years' community supervision. On direct appeal from that conviction, this Court affirmed the trial court's judgment. *See McPherson v. State*, No. 06-18-00218-CR, 2019 WL 2220119, at *4 (Tex. App.—Texarkana May 23, 2019, no pet.) (mem. op., not designated for publication). Thereafter, McPherson filed an application for a writ of habeas corpus in the trial court pursuant to Article 11.072 of the Texas Code of Criminal Procedure, claiming ineffective assistance of trial and appellate counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. The trial court denied the writ, and this appeal ensued.

## I.    Factual and Procedural Background

The evidence at trial showed that Trooper Michael Townes of the Texas Highway Patrol stopped McPherson for speeding after McPherson sped past Townes in his truck going eighty-four miles per hour (m.p.h.) in a seventy-five-m.p.h. zone. *McPherson*, 2019 WL 2220119, at *1. "Attempting to stop the truck, Townes turned on his patrol car's overhead lights and pulled his patrol car behind the truck . . . ." *Id.* McPherson eventually moved to the shoulder of the road but continued traveling there for approximately one or two miles. As Townes followed McPherson on the shoulder of the road, he noticed some brown objects fly out of the truck's window and hit the windshield of his patrol vehicle. At that point, Townes activated the siren "to mark the location of where it initially happened." The truck stopped shortly thereafter. After issuing McPherson a citation for speeding, Townes "turned around and went back to the area where [he saw] the objects fly out and went to look[] on the shoulder and in the bar ditch as far

2

as the objects that . . . [he] had seen thrown out, and [he] discovered . . . five joints and one little short one that would have been smoked." Townes identified the objects as marihuana wrapped in brown cigar paper.

The dash camera recording from Townes's patrol vehicle reflects that, when Townes returned to the area where the objects hit his windshield, he exited his vehicle at 2:10 p.m. Approximately eight seconds later, he picked up the first object. Townes's testimony relative to that discovery was that, once he "step[ped] out of the car, immediately right there on the shoulder where [he sat] there[] [was] one [joint] on the shoulder." Approximately seventeen seconds later, he picked up the second object. Approximately ten seconds after that, he picked up the third object. Townes located the discarded objects, which he described as "joints," in less than forty seconds, the first having been located after eight seconds. After having found those objects, Townes pulled his car up a few feet and searched for additional objects for less than a minute. The recording does not reflect any additional discoveries. Townes returned to his vehicle, bagged the evidence, and placed it in the trunk of his vehicle.

A different view from the front dash camera shows Townes in front of his vehicle displaying five "cigarillo joints" described by Townes as four to five inches long, with the circumference of a pencil, and one smaller blunt. The State's exhibit six depicts one of the objects thrown from McPherson's truck in mid-air, as captured by Townes's dash camera. The State's exhibit seven shows another such discarded object in mid-air, headed for Townes's windshield. According to Townes, he "saw the brown cigarillo hit the windshield right in front of [him]." Townes testified that those were "cigarillos" that McPherson threw from the driver's side window of his car. They could not have been "random cigarillos thrown out [of somebody

3

else's] window" because Townes saw "them thrown out of the driver's window, hitting the windshield of [his vehicle]."

On direct appeal, McPherson claimed that the evidence was legally insufficient to support his tampering conviction because the State failed to prove that he knew a law enforcement investigation was in progress at the time Townes saw the objects thrown from the truck. This Court affirmed the conviction based on that single point of error.

### A.    Application for a Writ of Habeas Corpus

In his application for a writ of habeas corpus, McPherson claimed that his trial and appellate attorneys were ineffective because they failed to argue, in their motion for directed verdict and on appeal, that tossing contraband out of a car and onto the shoulder, where the contraband was easily retrieved, is not "concealment."[1] McPherson claimed that, in failing to argue that he did not conceal anything, counsel was "apparently unaware that, in *Stahmann v. State*, 548 S.W.3d 46, 57 (Tex. App.—Corpus Christi 2018, pet. granted), delivered some ten months before trial, the Corpus Christi Court of Appeals explained that '[a]ctual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation.'" McPherson claimed that, because trial and appellate counsel failed to research the law as to what the State must prove to show that a person

---

[1]Section 37.09 of the Texas Penal Code defines the offense of tampering with or fabricating physical evidence as follows:

(a)    A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:
    (1)    alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding . . . .

TEX. PENAL CODE ANN. § 37.09(a)(1) (Supp.).

concealed evidence, counsel performed deficiently and that he was thereby prejudiced. The trial court denied the petition.

On appeal, this Court initially remanded the case to the trial court for additional fact-finding because the trial court denied the petition without addressing McPherson's claim of ineffective assistance of appellate counsel—instead only finding that trial counsel—who had since passed away and could not explain his reasoning—was not ineffective. This appeal is limited to the issue of whether McPherson's appellate counsel was ineffective.

**B.      Affidavit of Appellate Counsel**

In an affidavit filed by order of the trial court, appellate counsel[2] explained that he chose not to argue that McPherson did not conceal anything for the following reasons:

- "The Defendant testified at the trial and denied emphatically that he knew anything about the contraband introduced at trial and the exhibits admitted in support of the State's case. The Defendant never admitted to his counsel at any time that he had possessed the contraband that was found by the officer. Therefore, it seemed on appeal that insufficiency was the sole point of the appeal and involved no other issues."

- "Claiming that the State had failed to prove the element of concealment would have been a useless issue since there is no question that the jury verdict would have and did support the issue of concealment without Defendant admitting that he did all of the acts with the contraband that were introduced at trial."

- "There is no question that the Jury did find that Defendant committed all of the acts alleged by the State at Trial. These findings will support a Jury finding of actual concealment of the contraband by the Defendant. That is the difference in this case and **Stahmann**, 548 S.W.3d 57. The Appeals Court in **Stahmann** said that actual concealment involves showing that the **contraband was hidden, removed from sight or notice, or kept from discovery or observation**. An examination of the evidence at Defendant's trial, if possession is admitted, shows

---

[2]Appellate counsel also represented McPherson at trial as co-counsel. Because this appeal is limited to the issue of whether appellate counsel was ineffective, those portions of the affidavit relating to decisions made at trial are not recited here.

5

the contraband being thrown from Defendant's vehicle while it was traveling 70 to 85 miles per hour on a rural highway with a stiff wind, bar ditches, long grass in the median and adjacent houses to the highway and would suffice to show actual concealment through the actions of the Defendant."

- "**The Court of Criminal Appeals** in its decision on the **State's Petition for Discretionary Review** . . . agreed with the 13th District Court of Appeals although the State argued that the **Lujan case out of Amarillo** supported a conviction for tampering with evidence by concealment without successfully concealing the contraband."

- "There was no claim at any time by Defendant that he had the contraband in question so that altering and controlling the contraband became an issue. The Defendant chose which way to proceed and he is now looking for anything that might change his previous choices. His original choice was claiming insufficiency of the evidence claiming the State failed to show his possession of the marijuana. If Defendant had admitted his possession of the marijuana, there is no question that his subsequent actions would suffice to prove his actual concealment of the marijuana."

## C. Trial Court's Findings of Fact and Conclusions of Law

After having reviewed the application for a writ of habeas corpus, the State's response to the application, and the affidavit submitted by appellate counsel, the trial court issued findings of fact and conclusions of law. The pertinent findings follow:

- "[McPherson] was charged . . . with the offense of Tampering with or Fabricating Physical Evidence."

- "Sajeel Khaleel represented [McPherson] as lead counsel at trial and was co-counsel on appeal."

- "R. Keith Walker represented [McPherson] as co-counsel at trial and was lead counsel on appeal."

- "The case was tried before a jury on November 8, 2018."

- "At the conclusion of the State's case-in-chief, Mr. Khaleel moved for a directed verdict on unspecified grounds. The trial court denied the motion for directed

6

verdict. The jury subsequently found [McPherson] guilty as charged in the indictment."

- "[McPherson] filed a notice of appeal on December 26, 2018. [McPherson's] appellate brief was filed on March 19, 2019."

- McPherson's "[trial counsel] passed away on March 30, 2019[,] and the trial court was notified of that by R. Keith Walker, Applicant's lead appellate counsel."

- "[McPherson] alleged in his Application for Writ of Habeas Corpus that Mr. Walker provided ineffective assistance by failing to direct the appellate court's attention to the holding in *Stahmann v. State*, 548 S.W.3d 45 (Tex. App.— Corpus Christi 2018)."[3]

- "The opinion in *Stahmann* was issued on January 4, 2018. A petition for discretionary review was filed on July 6, 2018. The petition was granted by the Court of Criminal Appeals on October 10, 2018. The opinion affirming the appellate court was not rendered until April 22, 2020, approximately 17 months after Applicant's trial and approximately 11 months after the opinion affirming Applicant's conviction was issued."

- "[A]t the time of [McPherson's] trial and appeal," *Stahmann* "was not directly controlling precedent."

- "Even if *Stahmann* were controlling precedent, the facts in *Stahmann* are distinguishable from the facts in" this case.

- "In this case, [McPherson] was traveling at approximately 84 miles per hour and continued traveling after throwing the evidence from his vehicle. . . . The trooper noted his GPS coordinates to assist with returning to the location where the evidence was thrown. . . . After conducting the traffic stop, the investigating trooper returned to the area where the evidence had been thrown from [McPherson's] vehicle. . . . The trooper's in-car video, admitted at trial, showed the trooper searching a portion of the highway for the evidence. He eventually recovered marihuana cigarillos from the highway shoulder and bar ditch. . . . The evidence was therefore 'removed from sight or notice.'"

- "[This] Court specifically finds that Mr. Walker's performance was[ ]not deficient."

---

[3]McPherson more broadly complained that appellate counsel did not argue that the State failed to prove the element of concealment.

7

The trial court's pertinent conclusions of law are as follows:

- "When the law is unsettled, it is not ineffective assistance of counsel to fail to take a specific action on the unsettled issue. *See State v. Bennett*, 415 S.W.3d 867 (Tex. Crim. App. 2013)."

- "*Stahmann* was unsettled law at the time of [McPherson's] trial and appeal. Appellate counsel was not ineffective for failing to raise or cite *Stahmann* on appeal."

- McPherson "has failed to show that appellate counsel's representation was objectively unreasonable and that [he] was prejudiced by deficient representation."

- "Appellate counsel was not ineffective."

- "[McPherson] suffered no violation of due process."

## II.     Standard of Review

"In *Evitts v. Lucey*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel on appeal." *Ex parte Coy*, 909 S.W.2d 927, 928 (Tex. Crim. App. 1995) (per curiam) (orig. proceeding); *see Ex parte Alvarez*, 468 S.W.3d 543, 547 (Tex. Crim. App. 2015) (Yeary, J., concurring) (citing *Evitts v. Lucey*, 469 U.S. 387, 401 (1985)).[4]  Because a claim of ineffective assistance of appellate counsel implicates due process rights, such a claim is cognizable on a post-conviction habeas corpus application. *See Ex parte Coy*, 909 S.W.2d at 928 (applicant denied due process right to effective assistance of counsel on appeal in violation of his

---

[4]In *Lucey*, the Supreme Court recognized that this right was a function of due process:

> In short, when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause.

*Evitts v. Lucey*, 469 U.S. 387, 401 (1985).  Although there is "no constitutional requirement that states provide an avenue of direct appeal for criminal defendants," "those states that do must afford the appellant the right to counsel on appeal." *Alvarez*, 468 S.W.3d at 547.  *Lucey* "held this due process requirement would be but 'a futile gesture unless it comprehended the right to the effective assistance of counsel.'" *Id.* (quoting *Lucey*, 469 U.S. at 397).

8

Fourteenth Amendment due process rights under the Federal Constitution and Article 1, Section 10, of the Texas Constitution).

The applicant in a habeas corpus proceeding has the burden to prove his claims by a preponderance of the evidence. *See Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *In re Davis*, 372 S.W.3d 253, 256 (Tex. App.—Texarkana 2012, orig. proceeding). We generally review a habeas court's decision on whether to grant habeas relief for an abuse of discretion. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

We review the evidence in the light most favorable to the habeas court's ruling, *Kniatt*, 206 S.W.3d at 664, and defer to the habeas court's findings of facts and conclusions of law that are supported by the record, "even when the findings are based on affidavits rather than live testimony," *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd); *see Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006). However, "an abuse of discretion review . . . is not necessarily appropriate in the context of the application of law to facts when the decision does not turn on the credibility or demeanor of witnesses." *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999). Instead, when "'the trial judge is not in an appreciably better position than the reviewing court to make that determination,' a *de novo* review by the appellate court is appropriate." *Id.* (quoting *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)); *see Ex parte Mello*, 355 S.W.3d at 832 ("If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo."); *Ex parte Infante*, 151 S.W.3d 255, 258–59 (Tex. App.—Texarkana 2004, no pet.).

Because the facts are undisputed and the trial court's decision to deny relief did not turn on witness credibility, we will review the trial court's ruling under the de novo standard.

"A petitioner may establish a claim of ineffective assistance of counsel by proving, by a preponderance of the evidence, that counsel's performance fell 'below an objective standard of reasonableness' and that such deficient performance actually prejudiced the defendant." *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

## III.    Analysis

McPherson asserts that his appellate counsel was constitutionally ineffective in failing to raise a point of error on appeal challenging the sufficiency of the evidence to prove the element of concealment following his conviction of tampering with physical evidence. *See* TEX. PENAL CODE ANN. § 37.09(a)(1). He claims that, had counsel raised this point of error, it is probable that the outcome of the appeal would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("[D]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

### A.    Concealment and the *Stahmann* Standard

McPherson takes the position that, at the time of his direct appeal, proof of concealment required successful concealment. In other words, he must have successfully concealed something to be guilty of tampering with evidence by concealment. He, therefore, claims that his appellate attorney should have argued that he did not conceal anything, in reliance on *Stahmann* for the proposition that "concealment requires a showing that the allegedly concealed

10

item was hidden, removed from sight or notice, or kept from discovery or observation." *Stahmann*, 548 S.W.3d at 57.

In *Stahmann*, the Corpus Christi court decided the issue of whether Stahmann was guilty of tampering with physical evidence after Stahmann discarded a pill bottle from his car after having been involved in a two-vehicle accident. *Id.* at 51–52. Two witnesses saw Stahmann throw the prescription medicine bottle over a fence near the accident scene. The witnesses advised officers who arrived on the scene that they saw Stahmann throw something over the fence, and they pointed out where it was. *Id.* at 52. The bottle was located by the officers sitting on top of the grass on the other side of the fence. *Id.*

In considering whether the evidence was sufficient to show that Stahmann concealed the pill bottle, the court stated that the term "conceal" may be generally understood as "to hide, to remove from sight or notice, or to keep from discovery or observation." *Id.* at 55 (citing *Thornton v. State*, 401 S.W.3d 395, 398 (Tex. App.—Amarillo 2013), *rev'd on other grounds*, 425 S.W.3d 289 (Tex. Crim. App. 2014); *Rotenberry v. State*, 245 S.W.3d 583, 588–89 (Tex. App.—Fort Worth 2007, pet. ref'd); *Villarreal v. State*, No. 13-15-00014-CR, 2016 WL 8919852, at *5 (Tex. App.—Corpus Christi Dec. 8, 2016, no pet.) (mem. op., not designated for publication)).

Stahmann was not successful in concealing the contraband that had been in his possession. Instead, the bottle landed in "some 'shrubbery at the bottom' of a tree." *Id.* at 55. The fence that he tossed the bottle over was a chain link fence, and the witnesses could see all the way to the ground on the other side. *Id.* One witness "stated that he could see [the pill bottle] '[as] plain as day right there in the—he tried to throw it in the brush, but it didn't make

11

it.'" *Id.* Likewise, the officer who arrived to investigate the accident "agreed that he was 'able to very clearly see'" the pill bottle, which he described as "sitting above the grass." *Id.* at 55–56. Under those facts, the court concluded, "There was not evidence from which a juror could have reasonably inferred that the pill bottle was ever hidden, removed from sight or notice, or kept from discovery or observation." *Id.* (citing *Thornton*, 401 S.W.3d at 398; *Thornton*, 425 S.W.3d at 307 (Keller, P.J., concurring) ("Whatever else 'conceal' might mean in the context of the tampering with evidence statute, it at least means to remove from sight.")). Instead of rendering a judgment of acquittal, the appellate court "remand[ed] the cause to the trial court with instructions to reform the judgment to reflect a conviction . . . of attempted tampering with physical evidence, a state-jail felony." *Id.* at 71.

In upholding *Stahmann*, the Court of Criminal Appeals rejected the State's argument that "conceal" meant to "remove from sight or notice, *even if only temporarily*" and that the item concealed must be concealed from law enforcement. *Stahmann v. State*, 602 S.W.3d 573, 580–81 (Tex. Crim. App. 2020) (emphasis added) (agreeing with appellate court that "[a]ctual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation"). The court stated that, even if it were to assume that concealment must only be from law enforcement, the pill bottle was never concealed from law enforcement. *Id.* at 580. The court also rejected the State's reliance on *Munsch v. State*, No. 02-12-00028-CR, 2014 WL 4105281 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op., not designated for publication), and *Lujan v. State*, No. 07-09-0036-CR, 2009 WL 2878092 (Tex. App.—Amarillo Sept. 9, 2009, no pet.) (mem. op., not designated for publication).

In *Munsch*, an officer initiated a traffic stop at 10:00 p.m. of the car in which Munsch was a passenger. *Munsch*, 2014 WL 4105281, at *1. A search of Munsch revealed several items of drug paraphernalia and some cash. *Id.* Both the driver and Munsch were arrested, and Munsch was taken to jail. The driver, though, told officers that, when she pulled over for the traffic stop, Munsch had thrown methamphetamine packaged in a clear baggie out of the car window. *Id.* at *2. Thereafter, the driver accompanied the two officers back to the location of the stop, where the officers found a large baggie of methamphetamine in the ditch where the traffic stop occurred. *Id.* at *3. Munsch was convicted, among other things, of tampering with physical evidence. The appellate court agreed that Munsch concealed the methamphetamine from investigating officers. *Id.* at *8.

*Stahmann* distinguished *Munsch* on the basis that the evidence established that it was not until the driver was arrested and secured in the police cruiser that she told the officer about the discarded methamphetamine, whereas the witnesses in *Stahmann* told officers about the discarded pill bottle immediately. *Stahmann*, 602 S.W.3d at 581. And, even though the officer in *Munsch* was told where the baggie had been thrown out, the officer had difficultly locating it since it was dark and the package was thrown ten to fifteen feet out from the passenger-side window. *Id.* at 580–81.

In *Lujan*, the appellant made a throwing motion while being stopped by an officer who suspected a drug transaction. *Lujan*, 2009 WL 2878092, at *1. The officer then found a crack pipe on the ground. The court noted that, even though the crack pipe was both intact and visible, the jury could have lawfully inferred that Lujan attempted to prevent the pipe's discovery by throwing it away. *Id.* at *2. The Court of Criminal Appeals's rejection of *Lujan* was based not

13

only on the fact that nothing was concealed in *Lujan*, but also on the basis that the Amarillo court conflated the elements of intent and concealment. Those are "two distinct elements of the offense and the *Lujan* court erred if it concluded otherwise." *Stahmann*, 602 S.W.3d at 581. Ultimately, the *Stahmann* court agreed with the Corpus Christi court that "[a]ctual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation." *Id.* (quoting *Stahmann*, 548 S.W.3d at 57).

The Corpus Christi court's version of *Stahmann* was issued in January 2018. McPherson's trial of conviction took place in November 2018, and his appeal was filed the following month, eleven months after the Corpus Christi court issued its opinion in *Stahmann*. There are no post-*Stahmann* cases in the appellate courts that contradict it. In fact, with *Lujan* as the only real outlier,[5] the appellate court cases addressing concealment in the context of tampering with physical evidence adhere to a remarkably consistent definition of concealment, as outlined below.

B.    **Concealment Before *Stahmann***

The issue of concealment in the context of tampering with physical evidence was addressed in several cases before Corpus Christi issued its 2018 opinion in *Stahmann*. Perhaps the most oft-cited case in this area is *Hollingsworth v. State*, 15 S.W.3d 586 (Tex. App.—Austin 2000, no pet.). In *Hollingsworth*, an officer arrived to an area in which a knife fight had been reported. *Id.* at 589. When the officer arrived, he observed Hollingsworth walking down the street. Because the officer believed Hollingsworth might have been involved in the fight, he

---

[5]*Lujan*'s definition of concealment—"to prevent disclosure or recognition of" or "to place out of sight"—was consistent with the other appellate courts. *Lujan*, 2009 WL 2878092, at *2. There is at least one other case that conflates intent with concealment. *See Collier v. State*, 254 S.W.3d 576, 578 (Tex. App.—Eastland 2008), *pet. dism'd*, 284 S.W.3d 866 (Tex. Crim. App. 2009) (per curiam).

followed Hollingsworth in his marked patrol car. *Id.* at 590. Eventually, the officer got out of his car and asked Hollingsworth to stop. *Id.* Hollingsworth turned and looked at the officer but continued to walk away. Hollingsworth then "made a quick and furtive movement towards" a nearby dumpster, and the officer saw Hollingsworth "making a motion with his tongue in his mouth." "[Hollingsworth] duck[ed] his head and shoulder behind the dumpster and emerge[d] a few seconds later." *Id.* Another officer on the scene was able to see Hollingsworth spit out two cube-shaped objects behind the dumpster, which he suspected were cocaine. *Id.* Hollingsworth was convicted of tampering with physical evidence and possession of cocaine. *Id.* at 591. The Austin court agreed with Hollingsworth's argument that there was insufficient evidence that he concealed cocaine from the officers. *Id.* at 595.

The Austin court recognized and utilized the trial court's dictionary definition of "conceal" as "[t]o hide or keep from observation, discovery, or understanding; keep secret." *Id.* In applying that definition, the court observed that there was no evidence that Hollingsworth was carrying cocaine in his mouth with the intent to impair its availability as evidence. In other words, nothing in the evidence showed that Hollingsworth saw the police officers and then put the cocaine into his mouth to conceal it from them. *Id.* Instead, one of the officers saw Hollingsworth spit the cocaine out of his mouth, thus exposing it to view. *Id.* On those facts, the Austin court determined that there was legally insufficient evidence of concealment. *Id.*

The year after *Hollingsworth* was decided, this Court decided the case of *Lewis v. State*, 56 S.W.3d 617 (Tex. App.—Texarkana 2001, no pet.). In that case, Lewis was a passenger in a car that was stopped by police due to improper positioning of a dealer's tag in the rear window. *Id.* at 618. When Lewis was asked to step out of the car, the officer noticed that Lewis was

15

chewing something and had a plastic bag sticking partially from his mouth. After Lewis was restrained, the officer ordered him to spit out the contents of his mouth, but Lewis refused to comply and kept chewing. *Id.* at 619. Eventually, Lewis spit out a small plastic bag containing what appeared to be marihuana. The officer testified, though, that he could also see a white substance inside Lewis's mouth. That same white substance, which resembled cocaine, was on the bag removed from Lewis's mouth. *Id.* The evidence showed that the officers tried to force open Lewis's mouth by spraying him with pepper spray and by using tweezers. He nevertheless refused to expel the remaining contents of his mouth and continued chewing. *Id.* Lewis was ultimately taken to the hospital for stomach evacuation. The evidence showed that the contents of Lewis's stomach contained one gram of cocaine. *Id.* at 620.

On those facts, Lewis claimed that the evidence was insufficient to support his conviction of tampering with physical evidence. *Id.* at 624. This Court determined that, because the evidentiary value of the cocaine was not lost, the evidence was not destroyed, but it was concealed: "[b]y showing that Lewis put the cocaine in his mouth and swallowed it, the State proved that he hid it or kept it from observation according to the *Hollingsworth* court's definition of 'conceal.'" *Id.* at 625.[6]

In an unpublished opinion, the Dallas court applied the *Hollingsworth* court's definition of "conceal" to conclude that the evidence was insufficient to support the defendant's tampering conviction. *Blanton v. State*, Nos. 05-05-01060-CR, 05-05-01061-CR, 2006 WL 2036615 (Tex. App.—Dallas 2006, pet. ref'd) (not designated for publication). The facts in *Blanton* are somewhat similar to the facts in McPherson's case. As Blanton was in the process of being

---

[6]This Court has never disavowed use of the *Hollingsworth* definition of "conceal."

stopped for a traffic violation, the investigating officer observed Blanton throw two plastic baggies from his car window. The baggies were later retrieved, and although some of the contents had spilled, a measurable amount of cocaine remained. *Id.* at *1. Following his conviction of tampering with physical evidence, Blanton argued on appeal that, because he threw the baggies out in the officer's view, the State failed to prove he concealed the cocaine. *Id.* at *2. The Dallas court agreed that the State failed to establish that Blanton concealed the cocaine, citing *Hollingsworth*, 15 S.W.3d at 594–95 (although it concluded he had altered the cocaine because the baggies ripped and the contents spilled out). *Id.*

The following year, the Fort Worth court issued its opinion in *Rotenberry v. State*, 245 S.W.3d 583 (Tex. App.—Fort Worth 2007, pet. ref'd). Rotenberry was convicted of tampering with physical evidence after he concealed a body in a septic tank and then lied to police, telling them that he did not know where the body was located. *Id.* at 586. Because the statute of limitations had expired, Rotenberry could not be charged with concealing physical evidence by hiding the body. *Id.* As a result, Rotenberry was charged with concealing physical evidence by lying to the police. *Id.* The Fort Worth Court of Appeals rejected that theory, reasoning that "conceal" in the context of tampering with physical evidence does not fairly encompass the act of lying to police. *Id.* In reaching that conclusion, the court concluded that concealing physical evidence, as contemplated by the tampering statute, encompasses "[t]he act of removing from sight or notice; hiding." *Id.* at 588 (quoting *Conceal*, BLACK'S LAW DICTIONARY (8th ed. 2004)). This definition is in line with the other appellate courts who had addressed this issue at the time, including Dallas, Texarkana, and Austin.

17

*Lujan*, as discussed above, is a bit of an outlier. It is a 2009 unpublished Amarillo case in which the court determined that the defendant concealed a crack pipe he threw on the ground, even though the court defined "concealed" as "to prevent disclosure or recognition of" or "to place out of sight." *Lujan*, 2009 WL 2878092, at *2 (quoting *Conceal*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003)). The court said that, even "though the crack pipe was both intact and visible," there was enough evidence for the jury to "infer that defendant attempted to prevent the pipe's discovery by throwing it away." *Id.* *Lujan*'s conflation of attempted concealment and concealment means that it was wrongly decided. The Amarillo court, nevertheless, used a definition of "conceal" that was in line with other appellate courts.

Amarillo next wrote *Thornton v. State* on the issue of concealment. *Thornton v. State*, 377 S.W.3d 814 (Tex. App.—Amarillo 2012), *judgment vacated on other grounds by Thornton v. State*, No. PD-1517-12, 2013 WL 105874 (Tex. Crim. App. Jan. 9, 2013) (per curiam) (not designated for publication). In *Thornton*, police officers approached two individuals walking in the street rather than using a crosswalk—an offense for which the officers intended to ticket the individuals. As they approached, one of the officers observed Thornton reach inside a pocket and drop an object before he walked towards him. The officer picked up the object, which turned out to be a broken glass crack pipe. *Id.* at 816. Thornton was charged with tampering and was found guilty.

On appeal, Thornton argued that the evidence was insufficient to support his conviction for tampering because he did not conceal the pipe. Instead, he claimed that he merely "dispossessed himself of" it. *Id.* at 817. The Amarillo court cited its own previously utilized definition of "conceal," cited the similar definition utilized in *Hollingsworth*, and ultimately

18

relied on *Blanton* to conclude that Thornton did not conceal the pipe. *Id.* Rather, he merely "dispossessed himself of" it, leaving it in plain view, thereby ultimately revealing it to the officers.[7] *Id.* at 818.[8]

*Thornton* went to the Court of Criminal Appeals because the appellate court reversed and rendered a judgment of acquittal. *Thornton v. State*, No. PD-1517-12, 2013 WL 105874 (Tex. Crim. App. Jan. 9, 2013) (per curiam) (not designated for publication). The Court of Criminal Appeals agreed with the State that the appellate court should have considered whether the evidence was sufficient to support a conviction for the lesser-included offense of attempted tampering with evidence. *Id.* at *1. The State did not bring a point of error on the concealment issue, and the Court of Criminal Appeals did not address it. The Amarillo court, on remand, determined that the evidence was insufficient to support a conviction for attempted tampering. *Thornton v. State*, 401 S.W.3d 395, 398 (Tex. App.—Amarillo 2013), *rev'd on other grounds*, 425 S.W.3d 289 (Tex. Crim. App. 2014).

The Court of Criminal Appeals wrote that the jury heard evidence that Thornton "'palmed' the pipe as he removed it from his pocket." *Thornton v. State*, 425 S.W.3d 289, 305 (Tex. Crim. App. 2014). The court recognized that the State argued at trial and on appeal that Thornton successfully hid the pipe from the officer's view by "palming" it and therefore

---

[7]The court made no attempt to distinguish or otherwise explain its apparently inconsistent holding in *Lujan*.

[8]The Amarillo court had some internal disagreement regarding this issue as evidenced by its 2012 opinion in *Gaitan v. State*, 393 S.W.3d 400 (Tex. App.—Amarillo 2012, pets. ref'd). Gaitan was convicted of tampering with physical evidence when an officer responding to a dispatch about a disturbance noticed Gaitan discard something metallic near a carport doorway around midnight. *Id.* at 401. On appeal, Gaitan claimed that he did not conceal the handgun. The court stated, "That his effort was ultimately unsuccessful matters little; the factfinder had before it some evidence from which it could legitimately deduce that appellant was 'hiding' what he had from the officers called to investigate the disturbance." *Id.* at 402. This opinion included a strong dissent citing *Thornton* and *Blanton*. *Id.* at 403.

"'conceal[ed]' the pipe as that term is used in Section 37.09(d)(1) of the Penal Code." *Id.* at 305–06. While the court expressed no opinion on whether "palming" of evidence could amount to concealment, such testimony was nevertheless "probative evidence of an *intent* to conceal the pipe." *Id.* at 306. Finally, the court stated that it would have been reasonable for the jury to discount the fact that the officer never lost sight of the pipe, "since the element . . . under consideration [was] the appellant's *mens rea*—not his success (or lack thereof) at actual concealment." *Id.* In fact, the court gave no hint that palming the pipe or dropping the pipe could amount to concealment under the facts of that case and sent a clear message that the attempt to conceal and actual concealment are not the same crime. What is more, the court recognized that

> in cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding. There may be cases in which the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it.

*Id.* at 304. This was a 5–4 opinion, split over the issue of whether attempted concealment was even shown on those facts. Meanwhile, the Corpus Christi court wrote the predecessor to *Stahmann*.

In *Villarreal v. State*, No. 13-15-00014-CR, 2016 WL 8919852 (Tex. App.—Corpus Christi, Dec. 8, 2016, no pet.) (mem. op., not designated for publication), a Walmart loss prevention office who identified Villarreal to police as a shoplifter saw Villarreal run through the parking lot, "take a pill bottle out of his pocket and toss it 'underneath' a car." *Id.* at *1. The

20

loss prevention officer picked up the pill bottle and gave it to the officer on the scene. Villarreal was convicted of tampering. *Id.*

On appeal, the critical element was the act of concealment, as Villarreal was not charged with altering or destroying the pill bottle, which contained methamphetamine. *Id.* at *2. The court recognized that "'[c]onceal' is not defined in the Texas Penal Code" but that it has been construed "to mean to hide, to remove from sight or notice; to keep from discovery or observation." *Id.* (citing *Thornton*, 401 S.W.3d at 398).

In equating Villarreal's case with *Thornton*, the court wrote that "the pill bottle had not been concealed at any time and that the bottle landed in plain view and was 'not hidden in any way.'" *Id.*. "There [was] no evidence that may have supported a finding that Villarreal hid the bottle, removed it from sight or notice, or kept it from discovery or observation." *Id.* The evidence was such that "no rational trier of fact could have found that Villarreal 'concealed' the evidence." *Id.* (citing *Thornton*, 401 S.W.3d at 399); *see also Thornton*, 425 S.W.3d at 307 (Keller, J., concurring). The law continued to develop in this area, as illustrated by two 2017 cases in which two appellate courts found sufficient evidence of concealment by applying the standard definition of concealment utilized in the appellate courts since the *Hollingsworth* decision in 2000.

In *Hines v. State*, 535 S.W.3d 102 (Tex. App.—Eastland 2017, pet. ref'd), the court found sufficient evidence of concealment after Hines had scattered methamphetamine underneath his body in the backseat of a patrol car and the police did not notice it until after he got out at the jail. *Id.* at 111. The court applied the dictionary definition of "conceal" to mean "to prevent disclosure or recognition of" or "to place out of sight." *Id.* at 110 (quoting *Conceal*,

21

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2004)). The court stated that, under either definition, "a dispositive inquiry is whether law enforcement noticed the object before the defendant tried to hide it and maintained visual contact." *Id.* The court equated the facts of *Hines* with those in *Gaitan v. State*, 393 S.W.3d 400, 401 (Tex. App.—Amarillo 2012, pet. ref'd), in which police eventually found a metal object defendant discarded "into the night." *Id.* In contrast to *Blanton*, where the defendant threw a bag with cocaine from his car window exposing the bag to the officer's view, the evidence in *Hines* showed that the investigating officer did not immediately recognize or see the methamphetamine that he had discarded. *Hines*, 535 S.W.3d at 110–11. The court believed that that sequence of events was similar to what occurred in *Stuart v. State*, No. 03-15-00536-CR, 2017 WL 2536863 (Tex. App.—Austin June 7, 2017, no pet.) (mem. op., not designated for publication).

In *Stuart*, Stuart was convicted of "aggravated assault with a deadly weapon and tampering with physical evidence after stabbing a man with a knife and subsequently placing the knife beneath a storage box in the bedroom of [his] apartment." *Id.* at *1. On appeal, Stuart claimed that there was no evidence of his intent to conceal the knife because he put the knife where police could find it. *Id.* at *3. The court defined "conceal" as "the act of removing from sight or notice; hiding" and reasoned that, although numerous knives were openly displayed in the living room of Stuart's apartment, the knife used in the assault was found by police in a box in the midst of clutter in Stuart's bedroom. *Id.* (citing *Gaitan*, 393 S.W.3d at 401; *Rotenberry*, 245 S.W.3d at 588–89).

In concluding that the evidence of tampering was sufficient, the court distinguished *Rabb* and *Thornton*, because in both of those cases, police officers saw the items before the respective

22

defendants began trying to hide them.  *See Rabb v. State*, 483 S.W.3d 16, 17 (Tex. Crim. App. 2016) (defendant put plastic baggie in his mouth after police noticed him pull baggie out of his pocket); *Thornton*, 425 S.W.3d at 293 (officer never lost sight of object defendant removed from his pocket and dropped onto sidewalk).

Although the outcomes of these pre-*Stahmann* cases are different depending on the facts, the common thread is the definition each court used for "conceal":  (1) "To hide or keep from observation, discovery, or understanding; keep secret," *Hollingsworth*, 15 S.W.3d at 595; *Lewis*, 56 S.W.3d at 625; *see Blanton*, 2006 WL 2036615, at *2; (2) "[t]he act of removing from sight or notice; hiding," *Rotenberry*, 245 S.W.3d at 586 (quoting *Conceal*, BLACK'S LAW DICTIONARY (8th ed. 2004)); *Gaitan*, 393 S.W.3d at 401; *Stuart*, 2017 WL 2536863, at *3; (3) "to hide, to remove from sight or notice; to keep from discovery or observation," *Villareal*, 2016 WL 8919852, at *2 (quoting *Thornton*, 401 S.W.3d at 398); and (4) "to prevent disclosure or recognition of" or "to place out of sight," *Thornton*, 377 S.W.3d at 817; *Hines*, 535 S.W.3d at 110; *Lujan*, 2009 WL 2878092, at *2.

Also, prior to *Stahmann*, the Court of Criminal Appeals recognized that, "in cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding."  *Thornton*, 425 S.W.3d at 304.  In such cases, "the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it."  *Id.*

23

### C. Unsettled Law

In evaluating whether appellate counsel had a duty to raise a point of error on appeal, we cannot "engage in the kind of hindsight examination of effectiveness . . . the Supreme Court expressly disavowed in *Strickland.*" *Vaughn v. State*, 931 S.W.2d 564, 567 (Tex. Crim. App. 1996) (per curiam) (quoting *Ex parte Davis*, 866 S.W.2d 234, 241 (Tex. Crim. App. 1993) (per curiam) (orig. proceeding)). As a result, "[c]ounsel's performance will be measured against the state of the law in effect during the time of [appeal,] and we will not find counsel ineffective where the claimed error is based upon unsettled law." *Ex parte Roemer*, 215 S.W.3d 887, 894 (Tex. Crim. App. 2007) (orig. proceeding) (Keasler, J., concurring) (in dispensing legal advice to client during trial, counsel relied on the only available opinion dealing with the issue and that case clearly resolved the issue against the client) (quoting *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim. App. 1998)). This is "[b]ecause the law is not an exact science and it may shift over time." *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005) (orig. proceeding). Therefore, "the rule that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized." *Id.* (quoting 3 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 18.1 (5th ed. 2000)). Conversely, "[i]gnorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel, but the specific legal proposition must be 'well considered and clearly defined.'" *Id.* (quoting 3 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 18.4 (5th ed. 2000)).

The State argues that the definition of "conceal" within the context of the tampering statute was unsettled law until the Court of Criminal Appeals handed down a definitive opinion

clarifying that definition in *Stahman*. In support of this argument, the State relies on a footnote in *Chandler* citing *Saucedo v. State*, 756 S.W.2d 388, 393–94 (Tex. App.—San Antonio 1988, no pet.), for the proposition that counsel cannot be faulted for failing to anticipate law that was unclear until clarified by the highest court.[9] In *Saucedo*, the appellant complained that trial counsel failed to advise him that he would not be eligible for probation if he was convicted by the trial court of aggravated sexual assault. *Id.* Because the issue of whether appellant was informed of the prohibition before he filed his jury waiver was a disputed question of fact for the trial court to resolve, the appellate court could not say that the trial court erred in refusing to believe appellant's testimony that counsel did not inform him that he would be ineligible for probation if he filed a jury waiver. *Id.* at 394.

There was also a problem with the indictment in *Saucedo*—about which appellant did not complain—because it improperly joined certain offenses. *Id.* Although the indictment "could not, as we now know, legally charge more than one offense, still counsel cannot be faulted for not anticipating the law which was not clarified until the Court of Criminal Appeals handed down *Fortune* [*v. State*, 745 S.W.2d 364 (Tex. Crim. App. 1988),] and *Holcomb* [*v. State*, 745 S.W.2d 903 (Tex. Crim. App. 1988)]." *Saucedo*, 756 S.W.2d at 394.

These cases held that a single charging instrument could not: "(1) allege more than one non-property offense; (2) allege statutorily different property offenses, or (3) allege one property

---

[9]The *Chandler* court stated that "counsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based on unsettled law." *Chandler*, 182 S.W.3d at 359 (quoting *Ex parte* Welch, 981 S.W.2d at 184). The footnote in this comment includes a citation to *Saucedo*, 756 S.W.3d at 393–94, followed by the following parenthetical: "'In judging the effectiveness of counsel's assistance, a reviewing court looks to the totality of the representation as of the time of trial, not through hindsight'; counsel cannot be faulted for not anticipating law which was not clarified until the highest court handed down definitive opinion." *Chandler*, 182 S.W.3d at 359 n.38 (quoting *Saucedo*).

and one non-property offense." *Saucedo*, 756 S.W.2d at 390 (citing *Fortune v. State*, 745 S.W.2d 364, 367 (Tex. Crim. App. 1988), *overruled on other grounds by Ex parte Fortune*, 797 S.W.2d 929 (Tex. Crim. App. 1990) (orig. proceeding); *Holcomb*, 745 S.W.2d at 905). The law on misjoinder before *Fortune* and *Holcomb* was not at all clear. In *Fortune v. State*, 745 S.W.2d 364 (Tex. Crim. App. 1988), *overruled on other grounds by Ex parte Fortune*, 797 S.W.2d 929 (Tex. Crim. App. 1990) (orig. proceeding), the first misjoinder case, the court noted, "In its petition, the State contends, and rightfully so, that the two preceding opinions [*Ex parte Siller*, 686 S.W.2d 617 (Tex. Crim. App. 1985) (orig. proceeding), and *Drake v. State*, 686 S.W.2d 935 (Tex. Crim. App. 1985), *overruled by Fortune*, 745 S.W.2d at 370),] are irreconcilable, and that the bench and bar of this State deserve a clarification. We will now take the opportunity to do so." *Fortune*, 745 S.W.3d at 369. Based on the conflict between *Siller* and *Drake*, the Court of Criminal Appeals, in *Fortune*, ultimately overruled that portion of *Drake* that held that, when the State joins two or more offenses arising out of different transactions, such error must be objected to at trial or waived on appeal. *Id.*

Prior to *Fortune*, the Court of Criminal Appeals had issued conflicting opinions on the same issue, resulting in a thorny question of whether one could raise a misjoinder issue on appeal. The Court of Criminal Appeals has continued to recognize that the law is unsettled when it has issued conflicting opinions or when it has not addressed the proper construction of a statute. For example, in *State v. Bennett*, 415 S.W.3d 867 (Tex. Crim. App. 2013), the court held that counsel was not ineffective for failing to challenge the indictment based on the statute of limitations for aggravated assault. It reasoned that "the particular statute of limitations question . . . [was] unsettled." *Id.* at 869. It acknowledged that it had issued two opinions—lacking

26

substantive analysis—supporting counsel's belief that the statute of limitations was three years. *Id.* The court recognized that it had issued a third opinion that may have been inconsistent with its previous cases. That fact, it said, supported the conclusion that the statute of limitations for aggravated assault was an unsettled issue. *Id.*

In *Ex parte Smith*, the Court of Criminal Appeals held that counsel was not ineffective for permitting his client to plead guilty without raising the question of whether a person on deferred adjudication community supervision has been convicted as that term is used in the unlawful possession of a firearm statute. *Ex parte Smith*, 296 S.W.3d 78, 81 (Tex. Crim. App. 2009) (orig. proceeding). The court explained that, "[w]hether the Unlawful Possession of Firearm statute applie[d] to a person who [was], or ha[d] been, on deferred-adjudication community supervision [was] not clear," *id.* at 80, and that "the issue of the proper construction of the statute was unresolved and remain[ed] unclear," *id.* at 81. Likewise, in *Ex parte Bahena*, 195 S.W.3d 704 (Tex. Crim. App. 2006) (orig. proceeding), the court determined that trial and appellate counsel did not perform deficiently for not challenging the validity of applicant's stacked sentences for two convictions "for aggravated sexual assault of a child arising out of the same criminal episode and prosecuted in a single criminal trial." *Id.* at 705. The court said that it was not unreasonable for trial and appellate counsel to have believed that the sentences could have been stacked "based on law that was unsettled at the time and [was] unsettled to [that] day." *Id.* at 707 (evidence showed that applicant committed charged offenses both before and after change in statute).

Conversely, the Court of Criminal Appeals has recognized that legal concepts that are not "novel," even though unaddressed by the high court, do not fall within the ambit of unsettled law. This was true in *Ex parte Welch*, 981 S.W.2d 183 (Tex. Crim. App. 1998), in which the

court found that trial counsel was ineffective for failing to file a motion for probation when the defendant's previous placement on deferred adjudication probation was not a conviction and did not render him ineligible for probation. *Id.* at 185.

The court noted, "Because this is the *first case to consider* the probation eligibility of a defendant discharged from deferred adjudication probation, we would usually be hesitant to find counsel's failure to anticipate a future decision sufficiently egregious to consider his performance at the time of trial ineffective." *Id.* (emphasis added). The court recognized, however, that, "to be reasonably likely to render effective assistance to his client, a lawyer must be sufficiently abreast of developments in criminal law aspects implicated in the case at hand." *Id.* (citing *Ex parte Williams*, 753 S.W.2d 695, 698 (Tex. Crim. App. 1988) (orig. proceeding)). The court observed that "the idea that the order deferring adjudication and placing applicant on probation was not a conviction was not novel at the time of applicant's trial," *id.* (citing *McDougal v. State*, 610 S.W.2d 509 (Tex. Crim. App. 1981), *superseded by statute as stated in Olowosuko v. State*, 826 S.W.2d 940, 942 (Tex. Crim. App. 1992)), and concluded that trial counsel was therefore ineffective in failing to file a motion for probation, *id.* (citing *Ex parte Davis*, 866 S.W.2d 234 (Tex. Crim. App. 1993) (orig. proceeding) (counsel will be presumed to have knowledge of legal principle that is neither novel nor unsettled).

This case involves well-developed caselaw on what "conceal" means in the context of the tampering statute, which was neither novel nor unsettled at the time of McPherson's direct appeal. The definition of "conceal" was remarkably consistent across the appellate courts and was not subject to dispute before the Court of Criminal Appeals issued its opinion in *Stahmann*. Indeed, there has never been any disagreement among the appellate courts about the meaning of

28

the term "conceal." And, while some of the courts conflated the concept of attempted concealment with actual concealment, the Court of Criminal Appeals put an end to that in *Thornton* when it said, "[T]he element currently under consideration is the appellant's *mens rea*—not his success (or lack thereof) at actual concealment." *Thornton*, 425 S.W.3d at 306. Although the Court of Criminal Appeals had not weighed in on the meaning of "conceal" in the context of the tampering statute at the time of McPherson's appeal, certainly that term was not vague or indefinite and was given its plain, ordinary meaning by the appellate courts.[10] We, therefore, conclude that the definition of "conceal" was not unsettled law at the time of McPherson's direct appeal.

### D. Failure to Bring a Point of Error Challenging Concealment Was Objectively Unreasonable

"To obtain relief in the form of a new direct appeal on a claim of ineffective assistance of appellate counsel, applicant must show that '(1) counsel's decision not to raise a particular point of error was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal.'" *Ex parte Flores*, 387 S.W.3d 626, 639 (Tex. Crim. App. 2012) (orig. proceeding) (quoting *Ex parte Miller*, 330 S.W.3d 610, 623 (Tex. Crim. App. 2009)). Although appellate counsel "need not advance *every* argument, regardless of merit," *id.* (quoting *Evitts*, 469 U.S. 394), "if appellate counsel fails to raise a claim that has indisputable merit under well-settled law and would

---

[10]"Terms not defined in a statute are to be given their plain and ordinary meaning, and words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite." *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012).

necessarily result in reversible error, appellate counsel is ineffective for failing to raise it," *id.* (quoting *Miller*, 330 S.W.3d at 624).[11]

It is clear that appellate counsel need not raise every claim on appeal. Instead, counsel should "examine the record with a view to selecting the most promising issues for review." *Purchase v. State*, No. 01-07-00738-CR, 2008 WL 596848, at *9 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, pet. struck) (mem. op., not designated for publication) (quoting *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). According to the United States Supreme Court:

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . .
>
> . . . .
>
>      . . . . "Usually, . . . if you cannot win on a few major points, the others are not likely to help . . . ."
>
> . . . .
>
> . . . . This has assumed a greater importance in an era when oral argument is strictly limited in most courts—often as little as 15 minutes—and when page limits on briefs are widely imposed.
>
>   . . . .
>
> . . . . For judges to second-guess reasonable professional judgments and impose on [appellate] counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . .

---

[11]Under those standards, the court held that appellate counsel was not ineffective for failing to raise the sufficiency of the evidence on the appeal of his client's convictions of capital murder. *Flores*, 387 S.W.3d at 641. Appellate counsel explained that he was focused on constitutional issues and did not think there was a chance to prevail on the sufficiency issue. *Id.* at 639. After examining the evidence (with no examination of the issue of well-settled law, for this was a sufficiency question), the court agreed that counsel was reasonable in his determination that a challenge to legal sufficiency was not likely to be fruitful. *Id.* The court concluded that the applicant failed to show that there was reasonable probability that he would have prevailed had he raised a sufficiency claim on appeal. *Id.* at 641.

*Jones v. Barnes*, 463 U.S. 745, 751–54 (1983) (quoting ROBERT L. STERN, APPELLATE PRACTICE IN THE UNITED STATES 266 (1981)).

"Consequently, 'only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Purchase*, 2008 WL 596848, at *10 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)); *see Ex parte Daigle*, 848 S.W.2d 691, 692 (Tex. Crim. App. 1993) (orig. proceeding) (appellate counsel was ineffective in failing to raise jury-selection error that, under prevailing caselaw, would have been automatic reversible error). Moreover, "[a]n appellate court can evaluate appellate counsel's choice of issues by comparing significant issues which could have been raised with those that were raised and examining the trial record and the appellate brief." *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)) (cannot fault appellate counsel for winnowing out arguments and focusing on one central issue, appellant's competence to stand trial).

In *Ex parte Miller*, 330 S.W.3d 610, 623 (Tex. Crim. App. 2009) (orig. proceeding), the court used strong language in concluding that appellate counsel was ineffective. Miller had been convicted of murder, and his sentence was enhanced based on a previous burglary conviction and a previous drug conviction. In his habeas petition, Miller claimed that appellate counsel was ineffective for failing to raise the issue that the evidence was insufficient to prove that his burglary conviction was for an offense committed after his drug conviction became final. *Id.* at 614. Appellate counsel died before the application was filed and "could not defend his actions or strategic decisions." *Id.* at 615. The habeas court found that appellate counsel was ineffective because he failed to challenge the sufficiency of the evidence to prove that the enhancement paragraphs were sequential. *Id.*

31

In *Miller*, the well-settled law was the statute itself. The court noted that "the law concerning sufficiency of the evidence to prove enhancement for habitual felony offenders is well settled," citing Section 12.42(d) of the Penal Code.[12] *Id.* at 624. Next, the court noted that the evidence in the record did not prove the second prong, i.e., when the burglary offense was committed. *Id.* The court stated, "Any objectively reasonable attorney would have been familiar with the well-settled law concerning enhancement paragraphs and would have raised this 'sure-fire winner' claim." *Id.* at 624–25. In this case, there was "no plausible strategy for failing to bring a claim that is necessarily reversible error." *Id.* at 626. Finally, the applicant demonstrated prejudice because his legal-sufficiency claim would have prevailed on appeal.

Here, appellate counsel's affidavit listed his reasons for failing to argue lack of concealment. Those reasons collectively indicate that counsel did not consider bringing a point of error claiming that the evidence was legally insufficient to prove concealment. Counsel's affidavit, therefore, posited no plausible strategy for failing to bring this point of error.[13]

---

[12]That section requires the State to prove the following sequence of events: (1) the first conviction becomes final, (2) the offense leading to a later conviction is committed, (3) the later conviction becomes final, and (4) the offense for which the defendant presently stands accused is committed. TEX. PENAL CODE ANN. § 12.42(d).

[13]In *Ex parte Marin*, No. AP-75,719, 2008 WL 902143 (Tex. Crim. App. Apr. 2, 2008) (orig. proceeding), the court found that appellate counsel was ineffective. In that case, counsel failed to raise the issue of whether conspiracy to commit murder was a lesser-included offense of murder on direct appeal. *Id.* at *4. The court stated, "The presumption of effective assistance of counsel will be overcome when the ignored issues are clearly stronger than those presented by the counsel on appeal." *Id.* at *5 (citing *Robbins*, 528 U.S. at 288). The court further noted that it decided *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007), in 2007, at which time it determined that a focus on the statutory elements of the lesser and greater offenses in question was "the sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction." *Ex parte Marin*, 2008 WL 902143, at *5 (quoting Hall, 225 S.W.3d at 535). "[I]n light of the earlier conflict in our decisions following our opinion in *Day* on rehearing, applicant's challenge to the trial court's inclusion of conspiracy to commit murder as a lesser-included offense of murder raised a strong issue on which she was quite likely to prevail in light of our own decisions following *Schmuck*." *Id*. at *5. Marin's appellate counsel (somewhat reminiscent of appellate counsel in this case) stated,

Whether the failure to raise this issue was objectively unreasonable depends on (1) the evidence before the trial court and (2) the appellate point advanced on direct appeal. *See Flores*, 387 S.W.3d at 639; *Jones*, 463 U.S. at 752. As previously outlined, the evidence before the trial court showed:

- McPherson was traveling at eighty-four m.p.h. in a seventy-five-m.p.h. zone.

- Townes turned on his overhead lights and pulled behind McPherson's truck.

- After changing lanes and rolling down his windows, McPherson eventually pulled over to the shoulder of the road where he traveled for one to two miles.

- While traveling on the shoulder, McPherson was going approximately fifty-five to sixty m.p.h.

- Townes noticed some brown objects fly out of the truck's driver's side window and hit his windshield as he followed McPherson on the shoulder.

- Townes activated his siren to mark the location where the objects hit his windshield.

- After issuing McPherson a citation, Townes returned to the spot where he saw the objects hit his windshield.

- In less than forty seconds after exiting his patrol vehicle, Townes located five cigarillo joints on the shoulder of the road.

---

I did not raise a point of error on appeal regarding the lesser of conspiracy because there was no jury charge error; the only thing the Appellant did not do was to physically kill her sleeping husband herself. The record on appeal amply reveals that Appellant pursued a conspiracy which encompassed not only the killing but also a cover-up.

*Id*. at *6. Additionally, the court stated, "[A]ppellate counsel's affidavit as a whole indicates that he considered applicant's case to be frivolous. A reasonable attorney, in that situation, would have filed an *Anders* brief." *Id.* "The affidavit also indicates that the counsel failed to do any research on [this issue] . . . and if he had done such research, he would have known about [the applicable law]." *Id*. The court noted that counsel "ignored the importance of the trial counsel's efforts to preserve the lesser-included-offense issue, disregarded his own client's earnest requests to pursue that issue, and instead filed an appeal on claims that even he did not seem to believe had any merit." Finally, the court concluded "that counsel's failure to raise the lesser-included offense issue constituted deficient performance" and that such deficient performance caused obvious prejudice. *Id.*

We cite *Marin* solely for illustrative purposes. *See* TEX. R. APP. P. 77.3.

- Because he saw the cigarillos come from the driver's side window of McPherson's truck, they could not have been random cigarillos thrown from somebody else's window.

On direct appeal, McPherson claimed that the evidence was legally insufficient to prove that he knew a law enforcement investigation was in progress at the time Townes saw the cigarillos thrown from the truck. In evaluating this point, we stated, in part,

> Townes testified that his overhead lights were on while he caught up to and followed McPherson across two lanes of traffic and onto the shoulder. The jury could have reasonably rejected McPherson's claim that he was trying to get out of the officer's way and inferred that McPherson knew Townes was trying to stop him because, even though Townes followed McPherson onto the shoulder, McPherson did not stop until after Townes activated his siren, which is about the time Townes saw the objects thrown from the truck.

*McPherson*, 2019 WL 2220119, at *3. We further stated,

> The video recording shows that the truck's windows were rolled up when it initially passed Townes, but at the time of the stop, all four windows had been rolled down. Townes testified that marihuana has an extreme smell and that rolling down a vehicle's windows can allow the vehicle to "air out." McPherson denied smoking marihuana, smelling like marihuana, and having any in his truck, and he testified that, when he "got ready to stop," he rolled all four of the truck's windows down so Townes could see inside the truck. The jury was free to reject McPherson's testimony and accept Townes' testimony and infer that McPherson rolled his windows down to remove any possible marihuana smell from his vehicle's cabin.

*Id.* at *4. The claim that the evidence was legally insufficient to show that McPherson knew an investigation was in progress at the time Townes saw the cigarillos thrown from the truck was weak.

It is the most basic task of appellate counsel to examine the elements of the offense to determine whether the State has proven each element. Here, no matter which pre-*Stahmann* definition of "conceal" counsel chose to use, there was a convincing argument under the

34

evidence presented in the trial court that McPherson did not conceal the evidence. Because (1) the issue presented on appeal was weak and (2) the ignored issue of lack of concealment was clearly stronger than the issue presented on appeal, the presumption of effective assistance of counsel has been overcome. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000). "[A] lawyer must be sufficiently abreast of developments in criminal law aspects implicated in the case at hand." *Ex parte Welch*, 981 S.W.2d at 185. Because a lawyer sufficiently abreast of the well-settled law regarding what it means to conceal evidence in the context of the tampering statute would have brought this point of error on appeal, we conclude that the failure to argue lack of concealment on appeal was objectively unreasonable. *See Ex parte Miller*, 330 S.W.3d at 624–25.

### E. Harm

Even though the failure to argue lack of concealment was objectively unreasonable, McPherson must nevertheless show that he was harmed by that failure. To show harm, McPherson must show, by a preponderance of the evidence, that counsel's deficient performance actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to appellate counsel, this means that "there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal." *Ex parte Miller*, 330 S.W.3d at 623; *Ex parte Santana*, 227 S.W.3d 700, 705 (Tex. Crim. App. 2007) (orig. proceeding).

In *Lewis*, this court adopted the *Hollingsworth* definition of "conceal" to mean "[t]o hide or keep from observation, discovery, or understanding; keep secret." *Lewis*, 56 S.W.3d at 625 (quoting *Hollingsworth*, 56 S.W.3d at 625). Had this Court applied that definition to the facts presented here, there is a reasonable probability that McPherson would have prevailed on appeal. As a result, we conclude that McPherson was harmed by counsel's deficient performance.

**IV.    Conclusion**

We reverse the trial court's order.  Because appellate counsel was ineffective, McPherson is entitled to an out-of-time appeal of his judgment of conviction to address the issue of whether the State proved that McPherson concealed or attempted to conceal the contraband.  *See Ex parte McCarty*, No. 03-14-00575-CR, 2015 WL 2089091, at *1, *4 (Tex. App.—Austin Apr. 29, 2015, no pet.) (mem. op., not designated for publication) (addressing habeas claim that applicant's attorney failed to file notice of appeal and concluded "that an out-of-time appeal is a permissible remedy under article 11.072"); *Sterling v. State*, 681 S.W.2d 680, 682 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (demonstrating that ineffective assistance of counsel claim may provide basis for post-conviction habeas corpus relief in form of out-of-time appeal). McPherson is therefore entitled to be returned to that time at which he may file a written notice of appeal so that he may obtain a new appeal.  *See Ex part Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (granting out-of-time appeal restores the pendency of the direct appeal).  We remand this case to the trial court for entry of such an order.  *See Ex parte Valdez*, 489 S.W.3d 462, 465 (Tex. Crim. App. 2016) (orig. proceeding) (trial court with habeas authority has power to grant out-of-time appeal); *Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.*, 769 S.W.2d 554, 558–59 (Tex. Crim. App. 1989) (orig. proceeding) ("We hold that the district court had jurisdiction to entertain the writ of habeas corpus, and applicant in this cause properly invoked that jurisdiction by filing his writ with the district court.  Thus, the district court had jurisdiction of the habeas application.  Since the district court had this jurisdiction, it had the authority to grant an out-of-time appeal.").  The order should make clear that, should McPherson

wish to prosecute a new appeal, he must file a written notice of appeal in the trial court within

thirty days after the mandate of this Court issues.

<div style="margin-left:40%">

Scott E. Stevens
Justice

</div>

Date Submitted:    December 1, 2021
Date Decided:    January 12, 2022

Do Not Publish